[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Jane Anthony, Mary N. Burnham, Karen F. Carroll, Antonio R. Ferreira, Jr., Diane Harris, John A. Kost, and Max J. Loudenslager ("Defendants") have moved this Court to adjudge Michael Bucci, in his capacity as Director of the Department of Business Regulation, State of Rhode Island ("Department"), in contempt. The Department objects to this motion.
 Facts and Travel
The facts in this case are largely undisputed. The underlying controversy in this matter arose out of the employment of per diem monitors, judges, and a clerk at the Newport Jai Alai fronton by the Division of Racing and Athletics of the Department of Business Regulation, State of Rhode Island The original action was brought against the Governor of Rhode Island, his Chief-of-Staff, the Director of the Department, and the Deputy Director of the Department for the politically motivated discharge of the per diem employees. The employees claimed that they were fired upon the commencement of Democrat Bruce Sundlun's term as Governor because of their allegiance to the Republican Party. A suit based on discriminatory discharge was commenced in Federal District Court, in response to which Judge Boyle granted a preliminary injunction, enjoining the original defendants from giving the employees notice of termination. The First Circuit Court of Appeals affirmed the District Court's granting of a temporary injunction based on the "impressive array of circumstantial proof." Anthony et al. v. Sundlun etal., 952 F.2d 603, 606 (1st Cir. 1991).
As this matter was being called for trial in Federal District Court, the per diem employees entered into a settlement agreement with Bruce G. Sundlun, individually and in his capacity as Governor of the State of Rhode Island; R. David Cruise, individually and in his capacity as Chief-of-Staff to the Governor of the State of Rhode Island; and Anthony V. Arico, Jr., individually and in his capacity as Deputy Director of the Department of Business Regulation. The settlement agreement, dated August 28, 1992, states in pertinent part.
 "4. REORGANIZATION: The defendants agree that the plaintiffs will continue to hold their per diem
positions with the State of Rhode Island, Department of Business Regulation (or its successor) as the same are presently constituted and that their work hours, duties, compensation, number of hours worked and other terms of employment will not be modified, altered, or changed in any way (except for such increase in wages as may be granted to similarly situated state employees).
 In the event that the State of Rhode Island seeks to reorganize the Department of Business Regulation, or its successor, while defendant Sundlun holds the office of Governor, with regard to those jobs or those types of jobs currently held by plaintiffs and, as a result, the per diem positions held by the plaintiffs are eliminated and new full time positions are created (whether classified or unclassified) then, upon such reorganization, the plaintiffs, should they apply for employment by the State in any such new job or position created or modified as a result of such reorganization, would be considered fairly by the State for employment in any or all such new positions whose job description is substantially similar to any per diem job ever held by such plaintiff within the State. In so considering such plaintiff's application, the State of Rhode Island will give credit for and great weight to such applicant's prior experience and tenure in such per diem position and will not give any credit, consideration, or weight to such plaintiff's political beliefs.
. . .
 Notwithstanding the foregoing, in the event of such reorganization, the State or [sic] Rhode Island will employ for such positions at least 3 of the plaintiffs in the jobs created as a result of such reorganization." Agreement in Compromise and Settlement, 2-3, 4.
Approximately two years later, the Director of the Department brought a petition for declaratory relief to declare his rights with regard to the "employees of the State in the Division of Racing and Athletics" with whom he entered into the settlement agreement. Bucci v. Anthony et al.,
1995 R.I. Super. Lexis 22, at *1 (R.I.Super.Ct. January 23, 1995). The Department sought to apply a non-discriminatory pay reduction to the per diem employees involved in the settlement as part of a pay plan change adopted by the Unclassified Pay Board and approved by then-Governor Sundlun on March 8, 1994; the pay reduction was in response to a state fiscal crisis. Id. In his 1995 decision, Judge Israel denied the Department of Business Regulation's motion for summary judgment and treated the employees' objection to this motion as a separate motion for summary judgment on behalf of the employees, which he then granted. Id.
at *7.
In his decision, Judge Israel noted, "[t]his is no longer a First Amendment case. . . . [i]t is a simple contract case." Id. at *5-6. Judge Israel then interpreted the settlement agreement in strict terms, stating the following:
 "If the department wanted to reserve a right to reduce the employees' pay without discrimination in the event of a fiscal crisis, the time to include that provision was before signing the agreement, not afterwards.
. . .
 This court has squarely presented to it in this case a blatant effort by a now out-of-office administration to break its solemn promise which it gave in settlement of a claim it was about to lose in Federal Court. . . . The plaintiff has cited no authority which would permit the State to breach a specific written employment contract because of any alleged fiscal crisis. The evidence of a short-fall of revenue into the restricted fund referred to by the State is immaterial.
. . .
 The state is permanently enjoined from modifying, altering or changing the defendants' work hours, duties, compensation, number of hours worked and other terms of employment, except for such increases in wages as may be granted to similarly situated State employees." Id. at *7-8.
Judge Israel granted an injunction in favor of the per diem employees, thereby providing "injunctive relief against any threat by the executive branch" to violate the settlement agreement. Id. at *5. Although the request for declaratory relief was brought while Governor Sundlun was still in office, Judge Israel's decision and the accompanying order were filed on January 23, 1995, 21 days after Governor Sundlun's final term had ended.
On July 3, 2003, the legislature passed House Bill 376, which included the 2004 state budget, and contained an amendment to G.L. 1956 § 41-7-3
that prohibited the licensing of jai alai in Newport. On July 8, 2003, Governor Carcieri vetoed the 2004 state budget and with it the amendment to § 41-7-3. The House and Senate both sustained overrides of the Governor's veto on July 15, 2003; the amendment to § 41-7-3 then became effective on the same date.[1] On the following day, the Division of Racing and Athletics, a division of the Department, revoked Newport Grand's license to conduct its jai alai operation by way of a letter to the CEO of Newport Grand At the same time, the Department placed the five remaining per diem employees[2] on unpaid administrative leave and commenced the present declaratory judgment action.
Defendants moved for summary judgment, arguing that res judicata precluded a relitigation of the issues that were determined in Judge Israel's issuance of a permanent injunction in 1995. The Court denied Defendants' motion. In his bench decision, Judge Rubine stated:
 "This Court believes that the passage by the General Assembly in 2003 of the amended version of 41-7-3
prohibiting DBR from licensing Jai Alai in the City of Newport and rendering null and void all such licenses and prohibiting the licensees from operating thereunder is a material change in circumstances. . . . [T]he DBR, as a licensing agency, can only license and regulate in accordance with the mandates of the State Legislature. Once the General Assembly takes away a particular subject of licensure and therefore removes from regulation that which was in existence at the time the parties entered into a settlement agreement, there is no question but that the material operative facts have changed." (Tr. at 33-34)
Defendants then moved to adjudge the plaintiffs in the original (1994) declaratory judgment action in contempt; their motion is currently before the Court.
 Analysis
Defendants assert that the Department should be adjudged in contempt because, by placing the per diem employees on unpaid administrative leave, the Department has violated both the 1992 settlement agreement and the permanent injunction issued in 1995. The Department asserts that its conduct is not contemptuous because a supervening governmental action — passage of § 41-7-3 — renders compliance with the settlement agreement and injunction impossible. Two criteria must be satisfied before considering whether the Department's conduct was contemptuous: (1) the order that Defendants seek to enforce must be an order of the Court, and (2) that order must, of course, be valid and enforceable. See Trahan et al. v.Trahan et al., 455 A.2d 1307, 1311 (R.I. 1983) (purpose of allowing civil contempt is to enforce compliance with court orders and decrees). The first inquiry is a straightforward one. Although both parties discuss the scope and applicability of the 1992 settlement agreement at length, this agreement was a private contractual arrangement between the parties and was not an order of the Court. As such, appropriate remedies pertaining to this agreement may be sought under the law of contracts or in the underlying action for declaratory relief; however, the Court's contempt power is unavailable as a mechanism to coerce compliance with this private contractual arrangement. See Attilli v. Attilli, 722 A.2d 268, 269 (R.I. 1999) (contempt unavailable to enforce terms of settlement agreement not merged into divorce judgment but contempt would have been warranted if specific performance had been ordered by court). This Court may, however, use the settlement agreement to provide useful insight into the context in which the permanent injunction arose. The permanent injunction, in contrast, was granted by Judge Israel as an order of the Court, and may be enforced with civil contempt if it remains valid.
Before reaching the issue of contempt, this Court must first determine whether the 1995 injunction remains enforceable in light of the unique locus of facts for which it is now the center. A sufficient change in circumstances is a meritorious reason for a court to modify an injunction, so long as issues resolved at trial are not relitigated.Harris et al. v. Town of Lincoln et al., 668 A.2d 321, 328 (R.I. 1995) (citations omitted); see Crystal Restaurant Management Corp. v.Calcagni, 732 A.2d 706, 711 (R.I. 1999) (quoting Larken Minnesota, Inc.et al. v. Wray et al., 881 F. Supp. 1413, 1419 (D.Minn. 1995)) ("Injunctive decrees may be modified where changed circumstances require modification in order to achieve the purposes underlying the initial grant of relief.") Defendants erroneously assert that modification or dissolution of an injunction requires both a change in the applicable law and a change in the facts of a case; however, a material change in circumstances is sufficient.
Rule 60(b) of the Superior Court Rules of Civil Procedure outlines specific instances in which a party may obtain relief from a judgment or order. It states in pertinent part:
 "On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: . . . (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." (Emphasis added.)
Restatement (Second) Judgments § 73 echoes the sentiment underlying this rule, stating that "a judgment may be set aside or modified if: [t]here has been such a substantial change in the circumstances that giving continued effect to the judgment is unjust."[3] Defendants assert that there is no petition to modify or dissolve the injunction before the Court. However, this Court will treat the Department's request for declaratory relief and objection to the motion to adjudge the Department in contempt as incorporating a motion to modify or dissolve the 1995 injunction, since the purpose of the Department's action is, in part, to seek relief from its obligations under that injunction.[4]
In 1995, Judge Israel found that the language of the settlement agreement did not allow the Department to reduce the pay of the per diem employees in light of a state fiscal crisis. The resulting injunction states:
 "[t]he State of Rhode Island is permanently restrained and enjoined from modifying, altering or changing the defendants' work hours, duties, compensation, number of hours worked and terms of employment (as the same were prior to the Unclassified Pay Board's actions of February 8, 1994) except that for such increases in wages as may be granted to similarly situated State employees." Bucci v. Anthony, C.A. No. 94-2080 (R.I., filed Jan. 31, 1995) (Order).
In issuing this injunction, Judge Israel noted that the language of the settlement agreement does not allow the Department to violate the terms of the 1992 settlement agreement for reasons of financial hardship. The situation today, however, is not one in which the Department is attempting to initiate internal reform to forestall a financial calamity, as it was in 1995; rather, the legislature, an external entity, has eliminated part of the Department's functions, impeding the Department's ability to fully perform its obligations.
In arguing that the Department should be adjudged in contempt, Defendants claim that the current situation is no different from that which gave rise to the 1995 injunction. Specifically, Defendants maintain that it is "the State" that took action to revoke licensure for jai alai, it is "the State" that is bound by the injunction, therefore, it is "the State" that itself created the change in circumstances. This argument is without merit. The injunction simply identifies "The State of Rhode Island" as the party restrained. However, the overall context of this case, Judge Israel's decision (stating that "defendants are clearly entitled to . . . injunctive relief against any threat by the executivebranch to violate that agreement" (emphasis added)), and the caption of this and preceding controversies in this matter, make it eminently clear that the injunction was never intended to and never did bind the legislature. Bucci v. Anthony et al., C.A. No. 94-2080 (R.I., filed Jan. 31, 1995) (Order). The injunction bound the Department, and bound, at least for a time, the Governor of Rhode Island[5] The Department had no influence in the legislature's decision to override the Governor's veto
to pass legislation that revoked licenses for jai alai. The Department thus faces a situation in which the General Assembly has taken away a particular subject of licensure and has removed from the Department's regulation that which was in existence at the time the parties entered into the settlement agreement. There is no question that the conditions in which the current controversy comes before the Court are substantially different from those conditions in which the injunction and original settlement agreement arose. More importantly, the injunction and the subsequent legislative revocation of licensure for jai alai place diametrically opposed responsibilities on the Department. See Coalitionof Black Leadership v. Cianci, 570 F.2d 12, 14 (sufficient change in circumstances is meritorious reason to modify injunction or consent decree, but when legislation achieves in part what consent decree was intended to do, no substantial change in circumstances is present).
In arguing that the Department should be adjudged in contempt, Defendants further emphasize that the Supreme Court affirmed the issuance of the 1995 injunction and restated that the "agreement provides that the terms of defendants' employment will not be `modified, altered or changedin any way.'" Bucci v. Anthony et al., 667 A.2d 1254, 1256 (R.I. 1995) (emphasis added). Defendants further assert that the fact that the fronton has "gone out of business" should be of no concern to this Court because their agreement is with the State and not with the fronton. This Court notes that the fronton did not simply go out of business; the legislature recognized the declining financial viability of jai alai and revoked its licensure. The fullest extent of Defendants' interpretation of the Department's obligations under the injunction would result in the Department's having to employ the per diem employees exactly as they were employed prior to the commencement of the original action, regardless of whether jai alai, the fronton, Newport Grand, or any pari-mutuel establishment continues to exist in Rhode Island This of course, is rife with contradiction. If licensure for jai alai no longer exists due to action not attributable to the Department, and the per diem employees were involved in any way with jai alai in Newport, then the Department cannot both obey the statutory prohibition on jai alai in Newport while also refraining from altering in any way the duties of the per diem employees. If jai alai no longer exists in Newport, some aspect of the employment must change, or that employment must disappear altogether. Moreover, it is counter to logic and reason that the injunction was intended to protect a property interest in Defendants' jobs even in the event that the reason for employment itself ceased to exist. Defendants insist that the job functions performed by these per diem employees exist elsewhere within the Department; however, Defendants neglect to acknowledge that under their own reading of the injunction, even internal reassignment of employment, if at all possible, would still alter some aspect of employment and therefore violate the injunction. The Department now appears to be in the untenable position of either violating a statutory prohibition or violating an injunction.
With respect to modification of a consent decree, the United States Supreme Court, in an interpretation of the standard for the federal rule analogous to Super. R. Civ. P. 60(b) ( Fed.R.Civ.P. 60(b)), has stated that "[a] consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law." Rufo et al. v. Inmates of SuffolkCounty Jail et al., 502 U.S. 367, 388, 116 L.Ed.2d 867, 888, 112 So. Ct. 748, 762 (1992). A situation analogous to that articulated by the Supreme Court is present here: the injunction placed upon the Department an obligation to employ Defendants in a capacity that is now impermissible under state law. The revocation of licensure for jai alai has eviscerated the injunction; this is precisely the type of situation in which prospective application of the injunction would unequivocally be unjust.
This Court finds that the passage by the General Assembly of the amended version of § 41-7-3, prohibiting the Department from licensing live jai alai in the City of Newport, is a material change in circumstances rendering prospective application of the injunction inequitable. The Department, as a licensing agency, can license and regulate only in accordance with the mandates of the State Legislature. Moreover, the legislative prohibition on live jai alai in Newport could not be anticipated at the time the injunction was issued, and the continued existence of jai alai was clearly an assumption upon which the injunction rested. Accordingly, the passage by the General Assembly of the amended version of § 41-7-3 constitutes a change in the factual landscape of the case warranting relief under Rule 60(b). See Agostini etal. v. Felton et al., 521 U.S. 203, 216, 117 S.Ct. 1997, 2007,138 L.Ed.2d 391, 410 (1997). Because an external act has rendered impossible the ability of the Department to maintain Defendants' same terms and conditions of employment, this Court grants the Department relief from that injunction. In so doing, this Court takes no position on the scope or validity of the underlying settlement agreement.
Because this Court holds the 1995 injunction prospectively invalid, the Department cannot be in violation of a valid court order and therefore cannot be adjudged in contempt. See Ventures Management Co., Inc. v.Geruso et al., 434 A.2d 252, 254 (R.I. 1981) (citations omitted). However, assuming arguendo that the injunction is valid, the threshold for a finding of contempt has not been met. For an injunction to be enforceable by civil contempt, it should be clear and certain, and its terms should be sufficient to enable a person reading the injunction to learn what he may or may not do. Ventures Management, 434 A.2d 252 at 254 (citing Sunbeam Corp. v. Ross-Simons, Inc., 86 R.I. 189, 134 A.2d 160
(R.I. 1957)). "In the event that a document needs to be interpreted by the use of extrinsic evidence, normally such a finding is preceded by a holding that the document is ambiguous." Id. Thus, courts generally refrain from enforcing injunctions in contempt proceedings when one must resort to inference or implications to ascertain a party's duties under the injunction. See id. In so doing, courts seek to prevent an enjoined party from being punished for disobedience of an order which is capable of a construction consistent with innocence. Id. For example, in VenturesManagement, the court held that the terms, "management" and "competition," in an order enjoining a party from entering into certain business relationships were sufficiently ambiguous to an unlearned man to be susceptible of a construction consistent with innocence. Id. at 255. Because external evidence was required to define an essential term of the order, a holding of contempt was not appropriate. Id. at 254-55; seealso School Committee Of the Town of North Providence v. North ProvidenceFederation of Teachers, Local 920, 468 A.2d 272, 276 (R.I. 1983) (finding trial justice properly used discretion to deny motion to adjudge in contempt because judgment in question was not set forth with requisite specificity or particularity), Trahan, 455 A.2d 1307 at 1311 (contempt properly invoked where party was properly charged with understanding the clear legal import of provision of consent judgment in question).
Though a finding of contempt is within the sound discretion of the trial justice, it must be based on a "party's lack of substantial compliance with a court order, demonstrated by a failure of a party to `employ the utmost diligence in discharging [its] responsibilities.'"Durfee v. Ocean State Steel 636 A.2d 698, 704 (R.I. 1994) (quotingNatural Resources Defense Council, Inc. v. Train, 510 F.2d 692, 713
(D.C. Cir. 1975)); see Palmigiano et al. v. DiPrete et al.,700 F. Supp. 1180, 1191-92 (R.I. Dist. 1988). Determining when a party has achieved substantial compliance is a fact-specific inquiry and necessarily depends on the circumstances. Palmigiano, 700 F. Supp. 1180
at 1191-92. This determination should include consideration of the interests at stake and the effect of non-compliance on those interests.See e.g., Palmigiano, 700 F. Supp. 1180 at 1185-86, 1192-93 (interest in removing threat to constitutional values due to unacceptably poor prison conditions, combined with protracted non-compliance of court orders over the course of eleven years, unquestionably supported finding of civil contempt); Fortin v. Commissioner of Massachusetts Department of PublicWelfare, 692 F.2d 790, 795 (1st Cir. 1982). Although willfulness need not be shown as an element of civil contempt, the Court may consider the extent of a party's willfulness of contempt for the authority and dignity of the Court. Fleury v. Delfino, 1996 R.I. Super. LEXIS 44, at *7-8 (R.I.Super.Ct. July 29, 1996) (citations omitted).
The fundamental purpose of adjudging a party in civil contempt is to use the threat of judicial punishment to "enforce compliance with court orders and decrees when attempting to preserve and enforce the rights of parties litigant." Trahan, 455 A.2d 1307 at 1311 (citations omitted);School Committee, 468 A.2d 272 at 276. Thus, when a "party is literally unable to comply because compliance is not presently within its power," or when parties litigant do not actually have the rights they seek to protect, a finding of contempt is meaningless. Zannini v. The DowningCorp., 701 A.2d 1016 at 1018 (R.I. 1997), Fleury, 1996 R.I. Super. Lexis 44 at *7-8. Although impossibility may be a defense to contempt, mere inconvenience or annoyance, adverse economic impact, or a finding of good faith, are insufficient to operate as a defense to contempt. Fortin,692 F.2d 790 (diligence and good faith showing not a defense to civil contempt); Blais v. Franklin, 2001 R.I. Super. LEXIS 17, 8-9 (R.I.Super.Ct. 2001); see Durfee, 692 F.2d 790 at 702. "The logic of the defense [of impossibility] is inherent in the very nature of civil contempt"; however, a party claiming this defense bears a heavy burden of production. Palmigiano, 700 F. Supp. 1180 at 1196 (citations omitted). This burden is especially difficult to meet where the needs of the petitioners are urgent. Id.
Like the order in Ventures Management, the injunction in this case is too ambiguous to allow the Department to know what its obligations are in the event that jai alai ceased in Newport. See 434 A.2d 252 at 254-55. The injunction clearly enjoins the Department from "modifying, altering or changing the defendants' work hours, duties, compensation, number of hours worked and terms of employment." However, the injunction is silent as to the Department's obligations in the event that an act external to the Department causes jai alai to cease in Newport. In the present case, the Department finds itself in an extreme situation: the Department cannot continue to perform its obligations without violating a statute. In placing the employees on unpaid leave, the Department interpreted the injunction as being valid only as long as performance of its obligations remained legal. This Court believes that this interpretation of the injunction is a reasonable one; in fact, in light of the circumstances, it is the only reasonable interpretation, and one that comports with the Department's innocence.[6] Accordingly, the Department should not be punished for its actions with a finding of contempt. See Sunbeam,186 R.I. 189 at 196, 134 A.2d 160 at 163.
Finally, for the same reasons that this Court holds the injunction prospectively invalid, this Court also finds the legislative act revoking licensure for jai alai in Newport sufficiently compelling to establish the defense of impossibility of compliance. In Rhode Island Council 94v. State of Rhode Island, a former employee of the Department of Elderly affairs was to be reinstated in her job and receive back pay as a result of an arbitration award regarding her discharge. 1994 R.I. Super. LEXIS 62, at *1-2 (R.I.Super.Ct. March 22, 1994). In a subsequent contempt proceeding to enforce the court's confirmation order of this award, the court took notice of the fact that the employee's previous position had been eliminated and the Department of Elderly Affairs lacked the funds to recreate this position. Id. at *3-4. The court noted that these facts suggest a defense of impossibility, but ultimately concluded that the burden of showing this defense was not met because the Department of Elderly Affairs did not show the inability to comply, rather it demonstrated repeated, failed attempts at compliance. Id.
In the present matter, however, the Department has carried the burden of demonstrating impossibility by bringing to this Court's attention the legislative enactment that has ended jai alai in Newport. The passage of § 41-7-3 makes clear that it is not possible for the Department to maintain the status quo in employment terms for the per diem employees while simultaneously abolishing jai alai in Newport per the legislature's directive. While it may have been possible for the Department to move the per diem employees into other positions within the Department, the Department's relocation of said employees would be a violation of the injunction. The only way for the Department to comply with the injunction was to keep the terms and conditions of employment exactly as they were, yet maintaining the status quo was precisely what was rendered impossible with the revocation of licensure for jai alai. This Court finds that at the moment the Department's compliance with the injunction contravened a legislative enactment, compliance with the injunction was rendered impossible.
 Conclusion
It is abundantly clear that the language of the injunction and settlement agreement shed no light on the specific obligations of the Department should jai alai cease in Newport. Interpreting the injunction to be valid only so long as jai alai exists is a reasonable and valid interpretation, and is an interpretation that is consistent with the Department's actions. Furthermore, there is no question and this Court is fully satisfied that the Department substantially complied with the terms of the injunction until this ambiguity became a material issue, at which time the Department immediately initiated an action for declaratory relief. In light of these circumstances, it simply cannot be said that the Department was acting in derogation of the authority and dignity of the court. Accordingly, the motion to adjudge the Department in civil contempt is denied.
Counsel shall prepare an appropriate judgment for entry.
[1] § 41-7-3(c) states: "Commencing July 1, 2003, the division of racing and athletics shall be prohibited to license Jai Alai in the city of Newport. Any license having been issued and in effect as of that date shall be null and void and any licensee shall be prohibited from operating thereunder; provided, however, that any entity having been issued a license to operate a Jai Alai fronton prior to July 1, 2003 shall be deemed a pari-mutuel licensee as defined in § 42-61.2-1 et seq., and a licensee as defined in § 41-11-1 et seq."
[2] Two of the original plaintiffs (employees) have left their positions at the fronton and are no longer parties litigant.
[3] The comment for Restatement (Second) Judgments § 73 further notes that "in general . . . an injunction regulating a future course of continuing conduct is inherently subject to modification if future conditions change."
[4] Liberal construction of the pleadings so as to do substantial justice is a principle codified in Rule 8(f) of the Superior Court Rules of Civil Procedure, which states: "[a]ll pleadings shall be so construed as to do substantial justice."
[5] Both parties point to a specific clause of the settlement agreement, which mentions former Governor Sundlun's term of office, to support their diametrically opposite interpretations of the duration of the contract. The issue before this Court, however, is whether the Department violated a valid order of the Court. Although the duration of the settlement agreement may be a central issue in the underlying declaratory judgment action, it is not material to determining whether the Department should be adjudged in civil contempt.
[6] Defendants suggest that the job functions they performed continue to be performed by other individuals employed by the Department because the Newport facility accommodated not only live jai alai wagering (which is no longer in existence) but also simulcast jai alai wagering, greyhound race wagering, and video slot machines. The Defendants imply, then, that any per diem employee who worked in relation to live jai alai could perform the same job function for simulcast wagering, greyhound race wagering, or video slot terminals, and that for this reason the Department could have and should have continued to employ the per diem employees for these other events. Defendants' argument, however, is unsupported by any text in the injunction or settlement agreement. At no point do the injunction or settlement agreement state that the Department should continue to employ the per diem employees in some fashion if it became impossible to employ them in the exact fashion that they had previously been employed. The injunction and settlement agreement's language cannot be reasonably construed to create an obligation on the part of the Department to find similar positions for Defendants in other gambling venues regulated by the Department.