## GOVERNMENT OF THE VIRGIN ISLANDS, IN THE MATTER OF A.D., Respondent

Family No. IC 3/1997

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 6, 1999

DOUGLAS DICK, ESQ., St. Thomas, U.S.V.I., *for the Government*

GERALD DENNENBERG, ESQ., St. Thomas, U.S.V.I., *for the Respondent*

HOLLAR, *Judge*

## MEMORANDUM OPINION

On June 7, 1999, this matter came before the Court on the Government's motion to show cause why A.D. should not be held in contempt for having violated the Court's Order dated April 17, 1997. Alternatively, the Government moved the Court to revoke or vacate A.D.'s conditional release and place him at the Neuropsychiatric Unit for evaluation and treatment pending the court hearing. For the reasons that follow, the Government's motions are denied.

## I. FACTS AND PROCEDURAL POSTURE

On February 14, 1997, A.D.'s father filed a petition for involuntary commitment with this court seeking to commit A.D. to an approved public treatment facility for an indefinite period.

Following the hearing, on March 17, 1997, A.D. was committed to the Neuropsychiatric Unit at Roy L. Schneider Hospital.

On April 7, 1997, the Court conducted a review of the matter. After hearing testimony and the recommendation of Dr. Leighman Lu, the Court found that A.D.'s condition had improved enough to allow for his conditional release from the Neuropsychiatric Unit pursuant to V.I. Code Ann. tit. 19, § 723a. As a condition of his release, A.D. was required to attend the outpatient clinic as often as directed and take his medication as prescribed by his treating physician.

On or about February 6, 1999, while on conditional release, A.D. was arrested for disturbance of the peace and child abuse. On February 12, 1999, the Government filed a complaint against A.D. charging him with two (2) counts of obscene and indecent conduct, in violation of V.I. Code Ann. tit. 14, § 1022 (1); and one (1) count of vagrancy, in violation of V.I. Code Ann. tit. 14, § 2221 (a)(8). A bench trial was scheduled in the Criminal Division of this Court for May 14, 1999. On the date scheduled for trial, the Public Defender, representing A.D., requested a psychiatric evaluation of A.D. in order to ascertain, *inter alia*, his competence to stand trial. The Court granted the request and continued the matter until June 4, 1999.

On June 3, 1999, a psychiatric evaluation of the defendant, prepared by Dr. Ake Mattsson, Medical Director, Division of

66

Mental Health, was filed with the Court. The evaluation concluded that A.D. was not competent to stand trial. Dr. Mattsson expressly noted, *inter alia,* that A.D. "was actively hallucinating, had no concept/understanding of the charges against him, nor of court procedures and the role of judges, prosecutor and defense counselor".

On June 4, 1999, the scheduled trial date, the defendant appeared and was represented by counsel. On the day of trial, the Government conceded that the defendant was incompetent to stand trial. Additionally, the Government was not prepared to proceed because the victim/complaining witness, a student at Charlotte Amalie High School, was taking final examinations. The Government requested another evaluation of the defendant and a new trial date was set for July 2, 1999 at 11:30 a.m. on the criminal charges. On June 3, 1999, the same day the evaluation was prepared, the Government filed in the Family Division, under this involuntary commitment action, a motion to show cause why A.D. should not be held in contempt of his April 14, 1997 conditional release. The Government alleged in its motion that: (1) A.D. was placed on conditional release; (2) A.D. had violated the Court's order as stated in the attached letter of Julian Penn[1] (3) A.D. was scheduled for trial on June 4, 1999 before Judge Ishmael Meyers, but the psychiatric examination done by Dr. Mattsson found A.D. incompetent to stand trial; (4) A.D. allegedly exposed himself to a twelve year old child and made sexual advances towards her; (5) since A.D. was incompetent to stand trial, the trial judge may have no choice but to release him pursuant to local rules; and (6) A.D. is a danger to others and is in violation of his conditional release and is in urgent need of treatment. The hearing on the motion to show cause was scheduled for June 7, 1999.

## II. DISCUSSION

The issues before the Court are: (a) whether a person who has been rendered incompetent to stand trial for criminal charges, can be held for criminal contempt in a pending involuntary commitment action for failing to comply with a Court order issued two

---

[1] Julian Penn is a counselor in the Division of Mental Health.

years before, requiring him to attend the out-patient clinic and to take medication as prescribed; and (b) whether the court has jurisdiction to revoke or vacate the conditional release granted to A.D. and reinstate A.D.'s commitment to a public institution.

## A. A Person Who Has Been Rendered Incompetent To Stand Trial For Criminal Charges May Not Be Held For Criminal Contempt In A Pending involuntary Commitment Action

Following a court-ordered psychiatric evaluation dated February 9, 1999, A.D. was diagnosed on May 24, 1999 by Dr. Ake Mattsson, Medical Director, Division of Mental Health, as being acutely psychotic and incompetent to stand trial. Dr. Mattsson's evaluation was based largely on interviews he had with A.D. on April 15, 1999, and May 11, 1999. In his evaluation report, Dr. Mattsson stated that in both interviews with A.D., he was "floridly psychotic", lacking knowledge about his name, date or place of birth. He was also observed actively hallucinating, talking to himself, his arms and his nose. Moreover, he had no concept or understanding of the charges against him, the court procedures or the roles of the judge, prosecutor, and defense counsel. Dr. Mattsson concluded his evaluation by summarizing A.D.'s psychological state as that of being "acutely psychotic, calm, and *not possible to reach*". Having been determined to be incompetent to stand trial for criminal charges,[2] the Court must determine the type of contempt sought by the Government in order to ascertain whether A.D. is equally incompetent to stand trial for the alleged contumacious conduct.

■ Preliminarily, contempt is routinely divided legally into two classes: criminal contempt and civil contempt. Criminal contempt is further subdivided into summary and non-summary proceedings. The critical features which determine whether contempt proceedings are civil or criminal in nature are the substance of the proceeding and the character of the relief that the proceeding will afford. *Hicks o/b/o Feiock v. Feiock*, 485 U.S. 624, 631 (1988). If contempt sanctions are imposed for coercive purposes, i.e. to

---

[2] While there was no independent competency hearing, the Government, upon receiving the psychiatric evaluation, *conceded* that A.D. was incompetent to stand trial.

compel the contemnor to perform a particular act, the contempt is civil in nature. But where the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. *Id.*

■ Additionally, civil sanctions are prospective in nature and seek to coerce compliance at some point in the future. Criminal sanctions, on the other hand, are retrospective in nature; they seek to punish a contemnor for past acts which he cannot now undo. *Government of the Virgin Islands v. Santiago*, 35 V.I. 130, 139 (D.V.I. App. Div. 1996)(quoting *Shillitani v. U. S.*, 384 U.S. 364, 370 (1966)).

The Government has moved to have A.D. show cause why he should not be held in contempt of court for violating the Court's Order dated April 14, 1997. In its motion, the Government requested that A.D. be taken into custody for violating the Court Order and to protect the interest of the general public. The Government's motion did not contain any language conditioning the length of incarceration upon the contemnor's future compliance with the Order. In fact, the Government sought to vacate or revoke the conditional release, thus foreclosing any opportunity for A.D. to comply. The request is thus one to punish past acts, rather than to secure future compliance. Hence, the request is one for *criminal contempt* proceedings.

■ The accused in a criminal contempt proceeding must be afforded the same procedural safeguards as other criminal proceedings. As such, he must be presumed innocent until proven guilty beyond a reasonable doubt; accorded the right to refuse to testify against himself;[3] advised of the charges against him; provided a reasonable opportunity to respond to the charges; afforded effective assistance of counsel; given the right to call witnesses;[4] and provided a public trial before an unbiased judge.[5] In the case of serious contempts, the accused is also entitled to a jury trial.[6]

---

[3] *Young v. ex rel Vuitton et Fils, S.A., et al.*, 481 U.S. 785, 107 S. Ct. 2124, 2133 (1987) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444 (1911)).

[4] *Cooke v. U.S.*, 267 U.S. 517, 45 S. Ct. 390, 395 (1925); *see, also, Blackmer v. U.S.*, 284 U. S. 421, 440 (1932).

[5] *In re Oliver*, 333 U.S. 257 (1948).

[6] *Bloom v. Illinois*, 391 U.S. 194 (1968).

■ Because A.D. has been diagnosed as being incompetent to stand trial for substantive criminal charges, due process likewise prohibits the Government from prosecuting him for criminal contempt until his competency is restored.

**B. This Court Lacks Jurisdiction To Revoke The Conditional Release Granted.**

■ The authority to *revoke* the conditional release is exclusively and unambiguously vested in the *Administrator of the respective mental health treatment facility.* V.I. Code Ann. tit. 19, § 723a(b) establishes the circumstances under which conditional release granted under § 723a (a) may be revoked, and provides as follows:

> *"The Administrator of the treatment facility,* after consultation with the staff of the Division of Mental Health, Alcoholism and Drug Dependency and a psychiatrist, psychologist, or attending physician, *is authorized to revoke the conditional release granted under this section to a person whenever it appears that the person has failed to comply with any condition of release* such as taking of medication and keeping scheduled appointments, or upon facts or evidence presented by a family member, relative, mental health professional, or other responsible person, showing a need for immediate re-commitment because of the likelihood of harm to self or others, or for emergency treatment." (*Emphasis Provided*).

Because the statute clearly contemplates an administrative, rather than judicial determination, any judicial order vacating A.D.'s conditional release, would be unauthorized by statute and an impermissible usurpation of the Administrator's powers.[7]

### III. CONCLUSION

The Government initiated criminal contempt proceedings against the respondent and not civil contempt proceedings, since

---

[7] Of course, where the circumstances require the Administrator to act and he/she refuses, a petition for a writ of mandamus, pursuant to V.I. Code Ann. tit. 5, § 1361 *et seq.* would be appropriate.

incarceration was sought without opportunity to avoid imprisonment through compliance with the Court Order previously disobeyed or disregarded.

The criminal contempt proceedings impact upon the Fifth Amendment[8] liberty rights of the respondent to the same extent as any other criminal matter. Hence, the respondent would be entitled to "due process" and could not stand trial for criminal contempt if he is rendered incompetent. *Drope v. Missouri, supra,* at 181-82; *Pate v. Robinson,* 383 U.S. 375, 385-86 (1966).

Finally, conditional release previously granted respondent cannot be revoked or vacated *by the Court* because that authority is vested exclusively *in the Administrator* of the respective public mental health treatment facility, pursuant to V.I. Code Ann. tit. 19, § 723a(b).

Dated: July 6, 1999

---

[8]Substantive rights, including the Fifth and Fourteenth Amendments to the U. S. Constitution, are made applicable to residents and constituents of the Territory of the Virgin Islands through Section 3 of the Revised Organic Act, and codified at 48 U.S.C. 1561.