**PEOPLE OF THE VIRGIN ISLANDS, IN THE MATTER OF:**
**M.R. AND W.V., Minors**

Family No. SX-10-CS-01

Superior Court of the Virgin Islands

Division of St. Croix

May 8, 2015

HINDS ROACH, *Judge*

## MEMORANDUM OPINION

(May 8, 2015)

**THIS MATTER** came before the Family Division of the Superior Court on May 24, 2013 for Attorney-Defendant Kye Walker, Esq. ("Attorney Walker") to show cause why she should not be held in direct contempt of court for directing personal remarks against the sitting judge and refusing to leave the courtroom upon the Court's command to do so on May 8, 2013, while serving as appointed counsel in an abuse and neglect matter before the Court. Attorney Walker personally appeared through Counsel, Attorney Pamela Colon, Esq.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

### A. Contemptuous Conduct

On January 11, 2010, the Government filed a Petition in the Family Division of this Court to have the minor M.R. placed in the custody of the Department of Human Services, alleging he was in danger of abuse and neglect.[1] On January 22, 2010, the Court issued an Order Appointing Attorney Kye Walker as counsel for the Mother, Yaritza Ramos ("Ms. Ramos").

On May 8, 2013, the Court held a Final Review hearing to determine the possible reunion of Ms. Ramos with her children or their alternative placement. In attendance on behalf of the People was Assistant Attorney

---

[1] Subsequently, M.R.'s younger sister, W.V. also became a subject of this matter and was removed from her Mother's care and custody.

General Jasmine Griffin, Esq. Additionally, the Mother of the minor children, Ms. Ramos, personally appeared through Attorney Walker.

Counsel for the minors was also present in the courtroom; as well as social service agency representatives, including the Executive Director of CASA [Court Appointed Special Advocates] and the designated social worker from the Department of Human Services.

During Final Review proceedings, the Court addressed Ms. Ramos' failure to consistently comply with Court-ordered counseling.[2] However, Attorney Walker took exception to the Court's characterization of her client's ability to attend family counseling sessions as "simple." Personally addressing the Court, Attorney Walker stated:

> **WALKER:** I think it's easy for people to sit in this room and [voice level escalated] pass judgment on Ms. Ramos, and sit on the bench and drive a government car and remark as to what is easy for Ms. Ramos to do.

The Court requested that Walker be removed from the Courtroom "right now." However, Walker did not leave; rather, she returned to her seat at the counsel table, crossed her arms, and turned her back to the Court. Upon which time, the Court addressed her:

> **COURT:** Attorney Walker . . . I'd like for you to leave, please. You are being disrespectful to the Court.[3]

When Walker did not leave as requested, the Court instructed marshals to remove her. The proceedings continued in Walker's absence, whereupon terms, conditions, and a date were set for a subsequent review hearing.

On the same date, May 8, 2013, the Court issued an order for Walker to appear before it "to show cause as to why she should not be held in

---

[2] "[. . .] [I]t seems so simple, just do the counseling."

[3] WALKER: I'm not being disrespectful to the Court. You're making remarks about my client that have nothing to do with the facts that have been made. For the Court to sit there and say that it's easy —
THE COURT: Oh, marshal, please remove her.
WALKER: Not a problem.
THE COURT: I don't know what car the Court drives has to do with this case. I just don't understand. It's very unprofessional and unnecessary.
WALKER: Then I have to file a motion to recuse you because you're making comments about my client that are not in evidence. Off Tr., In the Sup Ct. of the V.I., Div. of St. Croix, May 8, 2013, p. 36, ln 20-25, p. 37, ln 1-11, Ct. Rep., Suzanne A. Otway-Miller.

contempt and sanctioned, pursuant to Superior Court Rule 138 ('Summary Disposition'), for her behavior." The show cause order further stated that Walker had "demonstrated contemptuous behavior in failing to follow a lawful order and making disrespectful statements to the Court all of which caused a disruption of the proceeding to occur."

## B. Show Cause Hearing

### 1. Admissions & Sanction

The continued show cause hearing came before Judge Hinds Roach on May 24, 2013.[4] Attorney Walker apologized to the Court for her behavior and "offensive comments." Defendant also conceded that such comments were "inappropriate" and were counterproductive to the Court, counsel and her client.[5]

Additionally, Counsel for Walker, a senior practicing Attorney, proposed an alternative sanctioning scheme whereby she would mentor and shadow Attorney Walker during all her in-court appearances in the Family Court, instructing her on courtroom decorum and other such points of professionalism.[6]

### 2. Objections/Arguments

Counsel for Walker asserted two (2) procedural and two (2) factual arguments. Procedurally, defendant argued that: **(1-a.)** contemptuous conduct must occur in *public* and family court proceedings do not meet such requirement because they are closed to the public; and **(1-b.)** pursuant to Superior Court Rule 139 governing criminal contempt, a *neutral fact finder* rather than the offended judge must adjudicate the issue of contempt to avoid violation of due process.

---

[4] On May 9, 2013, Attorney for the Defendant requested that the matter be continued and such request was granted.

[5] Walker apologized for her in-court conduct, admitting "it did not advance anybody's cause."

[6] Walker proposed that in lieu of a more traditional contempt sanction, that Attorney Pamela Colon, whose firm she worked at as an intern and who possesses 30 years of experience as a legal practitioner, supervise her on her family law case load and attend different proceedings with her, in order to mentor her appropriate courtroom demeanor, approach and tactics. Attorney Colon, who also served as Walker's counsel at the show-cause hearings added: "She was making a valid argument in very poor way (. . .) and the best way to learn is to observe."

Factually, Counsel for Walker argued that Attorney Walker's in-court remarks do not rise to a level of contempt because **(2-a.)** a finding requires *intent* and it was not Walker's intent to offend the Court. Relatedly, Walker argues that case law suggests a spectrum of behaviors which justify a finding of contempt and Walker's behavior does not approach such levels. Moreover, Walker asserts that **(2-b.)** the Court must find that her behavior *obstructed the administration of justice*, but no such interference occurred because the proceeding went forward after Walker's removal.

### 3. *Special Circumstances*

Lastly, Defendant submitted the special relationship she had developed with her client throughout three (3) years, to illuminate or justify her emotional, in-court response. Attorney Walker testified that due to their special relationship, Ms. Ramos had privileged access to her personal cell phone number which she could and did call at any time and that she had defended Ms. Ramos as if defending a close member of her family.[7]

Ms. Ramos corroborated as much when she testified before the Court that they shared "more than an attorney-client relationship." She explained that Walker provided her with transportation, supported and comforted her in a highly emotional process to regain custody of her children, and represented her when she was involved in a separate domestic violence incident.

## II. RELEVANT PRINCIPLES OF LAW

The judiciary is charged with the efficient, orderly and impartial administration of justice while upholding the dignity of the Court. *See, e.g., Francis v. People*, 57 V.I. 201 (V.I. 2012). Courts are vested with both broad discretion and inherent powers to carry out this extensive mandate.

The contempt power is "the most prominent" of these powers, because it is necessary to the adjudication of cases in an orderly and efficacious manner and therefore essential to the administration of justice.

---

[7] Attorney Walker stated that her in-court conduct "... caused me to examine how much I give to a client because looking back I feel like I was defending my child, puppy, or baby sister . . . [I] was very defensive."

*Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 562-63 (3d Cir. 1985). *See also In re Rogers*, 56 V.I. 325, 340, 344 (2012) (The court has both statutory and inherent power to compel obedience by way of contempt); *American Bar Association, Standard 6-3.5(a)* (Judge has the obligation to use his or her judicial power to prevent distractions and disruptions).

Virgin Islands courts specifically source their authority to impose contempt sanctions in Title 14 Section 581 of the Virgin Islands Code which provides that:

> Every court of the Virgin Islands shall have the power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other as —
>
> 1. Misbehavior of any person in its presence or so near thereto as to **obstruct the administration of justice**; *or*
> 2. Misbehavior of any of its officers in their official transactions; *or*
> 3. Disobedience or resistance to its lawful writ, process, order, rule, decree, or command. (emphasis added)

■ A contempt holding depends in a very special way on the setting, and such elusive factors as the tone of voice, the facial expressions, and the physical gestures of the contemnor; these cannot be dealt with except on full ventilation of the facts.

Contempt can be found despite evidence of good faith intentions. *Carty v. Turnbull*, 144 F. Supp. 2d 395, 415 (D.V.I. 2001). However, evidence of good faith may affect the court's calculation of contempt sanctions. *Id* at fn.35 (citing *Harley-Davidson, Inc. v. Morris*, 19 F.3d 142, 148 (3d Circ. 1994)).

## III. DISCUSSION

### A. Direct Summary Contempt is a Distinct Member In the Family of Contempt Powers.

Traditionally, there have been two (2) categories of contempt powers a Virgin Islands court may choose to exercise: civil or criminal — generally distinguishable by the courts underlying purpose for imposing them. That is, if the Court seeks to coerce someone to do something or to compensate a party for actual harm, it is likely civil contempt. *Berne Corp. v. Gov't*

*of the V.I.*, 570 F.3d 130, 139, 51 V.I. 1253 (3d Cir. 2009) (quoting *Taberer v. Armstrong World Indus. Inc.*, 954 F.2d 888, 896 (3d Cir. 1992)). Whereas, if the court seeks to vindicate its own authority through punishment, it is typically considered criminal contempt. *Berne* at 139.

■ Notwithstanding these distinctions, a court may impose these sanctions simultaneously if it wishes to accomplish both purposes. *Taberer* at 896. Moreover, the express purpose of a contempt sanction is not determinative of its category alone. *Int'l Union United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1988). That is, contempt sanctions may be potentially imposed for a combined purpose.

However, the Supreme Court of the Virgin Islands affirmed a distinct member in the family of contempt powers known as 'summary contempt,' where "the traditional distinction between civil and criminal contempt proceedings does not pertain." *In re Rogers*, 56 V.I. at 337 (Summary contempt may be either *criminal or civil* in nature); *Int'l Union* at 821, 828. It is a distinct category of "direct contempt's" that may be "adjudged and sanctioned summarily." *Id.*

■ That is, this species of contempt takes place under the direct gaze of the Court, and thus, the matter may be settled or disposed of in a relatively speedy, simple and non-juried proceeding. *See, e.g., id. See also* 17 C.J.S. *Contempt* § 117 ("Dispenses with the formality, delay, and digression that [. . .] goes with a conventional court trial."). Thus, summary contempt can be viewed as a procedural fast-track mechanism for direct contempt.

Superior Court Rule 138 governs summary dispositions and is the procedural companion to the elements established in the contempt statute, Tit. 14 V.I.C. § 581. It requires that:

1. the judge certify that (s)he saw or heard the conduct constituting the contempt; *and*
2. it was committed in the actual presence of the court, or in all instances of failure to obey a summons or subpoena of the court if properly served. (emphasis added)

Similar to criminal contempt, although to a lesser extent, summary contempt requires certain, strict due process safeguards because this expedited mechanism foregoes a conventional court trial. *In re Rogers, id.* at 339.

## B. Superior Court Rules Permit the Same Offended Judge to Summarily Dispose of the Matter.

■ Attorney Walker argues for a different trier of fact to dispose of the instant contempt matter. However, during direct contempt proceedings, the same judge whose court was the subject of the alleged contempt, also presides over its disposition — perhaps because the crux of this expedited mechanism is the court as witness. *See, e.g., In the Matter of Larry Little*, 404 U.S. 553, 92 S. Ct. 659, 30 L. Ed. 2d 708 (1972) (A contempt holding depends in a very special way on the setting, and such elusive factors as the tone of voice, the facial expressions, and the physical gestures of the contemnor; these cannot be dealt with except on full ventilation of the facts).[8]

In contrast, criminal contempt requires judge disqualification under Rule 139 "if the contempt charged involves disrespect to or criticism of" the presiding judge. SUPER. CT. R. 139(d). While Rule 139 is inapplicable in the instant matter, it is noteworthy that it prefaces the judge disqualification provision by deferring to the Superior Court Rule governing summary disposition. SUPER. CT. R. 139 (d) ("except as provided in Rule 138 [. . .]").[9]

## C. Obstruction of the Administration of Justice Falls on a Spectrum Whereby Such Conduct May Ultimately Prevent or Merely Delay Justice.

Attorney Walker argues that her conduct fails to meet the obstruction of justice element because it did not prevent the final review hearing from proceeding or concluding.

■ The spectrum of sanctionable, obstructive conduct ranges from ultimately preventing *to* merely *delaying* justice. *In re the Honorable Leon A. Kendall*, 712 F.3d 814, 828, 58 V.I. 718 (2013) (Some act that *interrupts* the orderly process of the administration of justice, or *thwarts* the judicial process) (emphasis added). That is, obstruction of the

---

[8] "Some measure of the flavor of what really occurred in this episode, and of the petitioner's attitude and demeanor, how his spoken words impressed those present, may be gleaned from the events and utterances described in the Court's per curiam opinion." *Id.*

[9] SUPER. CT. R. 139(d): *"Except as provided in Rule 138*, if the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the consent of the person charged with contempt." (emphasis added)

administration of justice constitutes acts that attempt to disrupt or that do prevent the court from performing its duties. *See id.* at 828; *In re Little,* 404 U.S. 553, 556, 92 S. Ct. 659, 30 L. Ed. 2d 708 (1972) (Talking loudly, acting boisterously, or attempting to prevent the judge or any other officers of the court from carrying out his court duties)).

## D. 'Willful Intent' and 'Public Display' Are Federal Elements of Contempt That Are Inconsistent with Local Law, and Thus Inapplicable.

Attorney Walker argues that to make a summary contempt finding, conduct which obstructs the administration of justice, must also: (1) be committed with willful intent; and (2) occur in the presence of the "public," citing *Virgin Islands v. Santiago,* 35 V.I. 130, 937 F. Supp. 1157 ("(S)ummary criminal contempt must not only be committed directly under the eye or within the view of the court, but must be an open threat to the orderly procedure of the court and a flagrant defiance of the person and presence of the judge before the public.").

Walker asserts that the review hearing from which the contemptuous conduct arose, took place in closed court and thus cannot satisfy the public display requirement. She further contends that particularly in light of the special relationship with her client upon which she elaborated and a witness corroborated, it was never her actual intention to offend the Court.

Due to the highly sensitive nature of matters heard in Family Court and especially the frequent involvement of children and juveniles, the Court, upon its *discretion,* may close hearings and trials to the general public. *See* SUPER. CT. R. 102. *See also, e.g., In re M.B.,* 2003 PA Super 76, 819 A.2d 59, 64 (2003) ("[P]rivate hearings not intended to simply avoid publicity and its resulting stigma, but also part and parcel of the informal and nonadversarial nature of juvenile court hearings.") ("Public access has the potential to endanger the fairness of the proceeding or disrupt the orderly process of adjudication."). The Defendant essentially asserts that a person who disrupts the proceedings of such a court is immune from its power to impose contempt sanctions.

Note that the Court never expressly exercised its discretion to close the review hearing to the public and no member of the public requested nor was denied access to the courtroom.

Most significantly, the asserted public display element is a *federal* contempt requirement that is inapplicable pursuant to Superior Court Rule 7 and recent Virgin Islands Supreme Court precedent.[10] *In re Rogers*, the lower court interpreted the "in the presence of the court" requirement through the Federal statute.[11] Thus, the Superior Court concluded that summary contempt could not be "imposed as a result of an attorney's non-appearance" or disregard of show cause orders, which "cannot, by definition, occur in the presence of a court." *Rogers* at 337-8.

However, the Supreme Court in *Rogers* reasoned that Federal Rule 42(b) was only applicable through Superior Court Rule 7 which provides that Federal Rules apply so long as they are not inconsistent with Superior Court Rules.[12] *Id.* at 338-339. The higher court determined, in fact that Federal Rule 42(b) "limits summary contempt" when compared with the broader Superior Court Rule 138, which permits summary contempt if a person disregards a subpoena or summons. *Id.*

The court thus affirmed that *Rogers* was properly sanctioned for summary contempt under Rule 138 for non-appearance after being served with an order of the court, concluding that "we expressly decline to follow the holdings of cases to the contrary," specifically naming *Santiago* and *In re Horton. Id.*

### E. The Judge's Underlying Purpose for Imposing a Contempt Sanction, Whether to Coerce or to Punish, Or a Combination Thereof, Often Dictates the Nature and Extent of the Sanction Itself.

■ The law affords Courts great and sound discretion in fashioning an appropriate sanction for contempt. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994). However, the extent and nature of sanctions are

---

[10] In fact, the "public" requirement of *Santiago* is derived from court's interpretation and application of Federal Rule of Criminal Procedure 42 and its complementary federal contempt statute 18 U.S.C. § 401.

[11] 18 U.S.C. § 401 requires (1) proof beyond a reasonable doubt of (2) misconduct, (3) in the *presence* of the court, (4) committed with intent to obstruct the proceedings, which (5) obstructs the administration of justice. (emphasis added.)

[12] "The Practice and Procedure in the Superior Court shall be governed by the Rules of the Superior Court and, to the extent no inconsistent therewith, by the Rules of the District Court, the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence." SUP. CT. R. 7.

tempered by the Court's purpose in imposing them or whether such sanctions are civil or criminal in nature. For instance, it is well established that the purpose of civil contempt is either coercive or compensatory.

■ Therefore, the court is limited to fashioning a sanction to the extent required to compel compliance or repair *actual* damages or harm. *Carty v. Schneider*, 986 F. Supp. 933, 38 V.I. 213 (1997) (must employ least possible power adequate to achieve future compliance and fit the character and magnitude of harm). Civil contempt sanctions which exceed actual damages are considered punitive and consequently enter the territory of criminal contempt. *Id.*

■ Meanwhile, the purpose of criminal sanctions is to vindicate the Court's authority for conduct that occurred in the past. *Id.* Thus, such sanctions should relate to the magnitude of the breach of professional conduct. *Com. of Pa. v. Local Union 542, Intern. Union of Operating Engineers*, 552 F.2d 498, 519 (C.A. Pa. 1977) ("[T]he fine should bear some reasonable relation to the nature and gravity of the contumacious conduct."). The court may impose a fixed prison sentence and/or a fixed fine payable to the court registry.

In *In re Rogers*, the Superior Court ordered Attorney Rogers to pay fines for failing to appear at show cause hearings. The sanction had the typical characteristics of criminal contempt because it was "retrospective and could not be purged," and "had to be paid into the registry of the court, rather than to the opposing party." *In re Rogers*, 56 V.I. 325, 337 (2012) (citing *East End Taxi Services*, 411 Fed. Appx. at 499 for some of the factors that indicate a sanction is criminal, rather than civil, in nature)).

However, the higher court affirmed the dual nature of summary contempt when it concluded that "although the sanctions were criminal in nature, we find that they fall within the type of sanctions that may be punished summarily." *Id.*

## IV. CONCLUSIONS OF LAW

### A. In the Presence of the Court, Attorney Walker Obstructed the Administration of Justice and Disobeyed the Court's Order as Contemplated in Title 14 Section 581 (1) and (3); and is Therefore Subject to Summary Disposition Pursuant to Superior Court Rule 138.

During a judicial proceeding, Attorney Walker's outbursts and disregard for the Court's commands and orderly process brought the wheels of justice to a screeching halt as the Court had to set aside the matter at issue in order to address Walker's conduct and finally remove her from the courtroom to prevent further disruption to the administration of justice.

■ In the instant case, court's interpretation and application of Federal Rule 42 governing contempt, would limit summary contempt with requirements that the broader Superior Rule 138 do not contemplate. In particular, the "public" and "intent" federal requirements are inconsistent with and constrict Rule 138. Thus, such requirements are inapplicable and this Court expressly declines to follow cases to the contrary.

■ Attorney Kye Walker obstructed the administration of justice by personally criticizing a judge in open court, arguing with the court in aggravated and elevated tones, and blatantly disobeying the Court in insolent disregard of its commands to leave the courtroom. Such conduct falls squarely within sanctionable contempt of the court's authority as contemplated in Title 14 Section 581 (1) and (3) and may be summarily disposed of by the offended Court under Rule 138.

Note that Attorney Walker's due process rights were safeguarded because she was properly served with notice of the charges and given reasonable time to prepare a defense, afforded the opportunity to be heard in open court, and the Judge does certify in the accompanying Order of contempt, that she heard and saw the contemptuous conduct. *See In re Rogers* at 339.

### B. Sanction

#### 1. Gravity and Severity

The most important person present in the courtroom during the review hearing was Walker's client as the mother of the two minor children that

were removed from her care. It does not go unnoticed by this Court that the contentious issue that immediately preceded Walker's outburst was her client's failure to heed the authority of the Court and comply with its conditions, namely to regularly attend family counseling sessions.

Significantly, the two (2) minor children were removed from their mother's care due to incidents of uncontrolled anger and violence. In fact, issues of anger management were a central theme in the lives of the mother and the children who had modeled her behavior.

For instance, the 13 year old boy, M.R., was kicked out of summer camp for fighting and suspended from school for striking his teacher in front of the class, and then attempting to wrestle her. Meanwhile, the four (4) year old girl, W.V. had also exhibited similar behaviors. CASA stated, "She's not necessarily the (sic) easy going child. She's a child who, from what we've seen, kind of is a fighter."

During the hearing, the attorney on behalf of the minor children spoke of the importance of counseling to address anger management issues:

> "[. . .] Ms. Ramos doesn't want to face those issues. Because not only does M.R. have an anger management issue, but Ms, Ramos has an anger management issue, that is why we're in the courtroom in the first place, M.R. was physically abused. [. . .] [I]t's absolutely vital that those sessions take place."[13]

For the sake of their safety and future, mother and children critically needed to attend sessions to learn "to respond and cope with stress rather than to react to it."[14] As her Attorney and personal ally, Walker is in a powerfully influential position in relationship to Ms. Ramos.

 Thus, the gravity and impact of Attorney Walker's disobedience, witnessed by Ms. Ramos, is potentially far-reaching and undermines the Court's authority in a high stakes legal process. Instead of encouraging her client's respect for the Court's authority by modeling self-restraint, Walker failed to manage her emotions appropriately and reinforced to her

---

[13] Off. Tr., In the Sup. Ct. of the V.I., Div. of St. Croix, May 8, 2013, p. 27, In 8-12, Ct. Rep., Suzanne A. Otway-Miller.

[14] CASA stated that M.R. was attending individual counseling sessions "to recognize the triggers and to respond and cope with his stress rather than react to it." Off. Tr., In the Sup. Ct. of the V.I., Div. of St. Croix, May 8, 2013, p. 29, In. 5-7, Ct. Rep., Suzanne A. Otway-Miller.

client that respect of the Court's authority is optional, rather than obligatory.

The impact of which is even beyond the obvious: immediate interruption of the justice process and waste of limited court resources, including utilizing court personnel to hold multiple hearings, transcribe proceedings and write orders — which took a considerable period of time. To foster such a misguided belief is to frustrate the duty of this Court and the ultimate aim of the instant judicial process and its orders: to ensure the best interest of the children.

### 2. Imposition of Sanction

■ For the foregoing reasons, this court imposes a Three-hundred dollars ($300.00) sanction upon Attorney Kye Walker for summary contempt, made immediately payable to the Court registry.[15] Such sanction is characteristically criminal in nature, because it is intended to address past behavior, rather than secure future compliance. *Government of Virgin Islands re A.D.*, 41 V.I. 65, 69 (Terr. V.I. 1999).

As such, the proposed (alternative) sanctioning scheme, in which Attorney Walker offered to submit to the tutelage of an experienced attorney in order to improve her courtroom demeanor, is incompatible with criminal contempt because the contemptuous behavior that took place in the past cannot be redeemed or "purged" with compliant behaviors and the Court does not seek to compel future compliance of a specific Court order or directive.

Moreover, it is established that the direct nature of the contemptuous conduct triggers the expedited mechanism of summary contempt. Here again, the alternative sanctioning scheme proposed by Attorney Walker is contrary to an expedited resolution because the Court's limited resources would be further burdened in order to monitor and evaluate the progressive improvement of Walker's courtroom demeanor under the supervision of Attorney Colon. Thus, while acknowledging the broad discretion of Courts in fashioning sanctions, this Court declines to adopt the mentorship alternative to sanctions.

---

[15] This is a fairly common practice of some judges in lieu of payment to the Court registry, but is not to be considered damages to any injured party.

## V. CONCLUSION

While Walker's proposed mentorship model may not be an appropriate alternative to sanctions in this instance, the Court joins with Attorney Kye Walker in recognizing the need to educate newer Attorneys on professional conduct in the courtroom and the call for an open and sustained dialogue between bar and bench on courtroom demeanor.[16]

Veteran legal practitioners frequently bemoan the apparent decline of professional conduct. The Court opines that they do so not out of an outdated sense of rigid formality, but rather because courtroom decorum critically impacts the orderly, efficient and impartial administration of justice, not to mention clients, attorneys and our society as a whole. Catherine Therese Clarke, *Missed Manners in the Courtroom*, 50 MD. BUS. REV. 945, 952 (1991).

It is well accepted that Attorneys are required to provide zealous representation of their clients. Relatedly, the courtroom is often analogized to a theatrical drama in which "actors play out the guilt and innocence of a defendant for the trier of fact to assess." Laurie L. Levenson, *Courtroom Demeanor: The Theater of the Courtroom*, 92 MINN. L. REVIEW 573, 573. In fact, the legal imagination is fueled by court TV and courtroom dramas where it seems that attorneys who enjoy the most success, take command of the "stage" in a dramatic, high energy performance of their knowledge of law, language and people.

However, the less alluring, albeit day-to-day reality of skillful lawyering is balancing zeal with requisite "self-restraint, respect and discipline." Clarke, *supra* at 963, fn.73. Otherwise, overly zealous conduct can breach the boundaries of professionalism and enter the realm of contempt.

When this happens, the consequences can be instantly felt by both counsel and client. For instance, when an attorney is dressed down in front of their client in open court or even removed from the courtroom, it may cast them in a vulnerable or unprofessional light, which can make the client lose faith in the ability or prowess of his chosen counsel.[17]

---

[16] Walker also suggested that CLE's and a dialogue between bar and bench were needed to address courtroom conduct.

[17] For this precise reason, this Court chose to delay disposition of the contempt matter in the above-captioned case so as not to prejudice parties or proceedings.

■ Moreover, offensive conduct can unfairly prejudice her client by aggravating the judge to the extent that his judgment is unconsciously affected. Clarke, *supra* at 956. Thus, zealous advocacy when tempered and strategic is a powerful asset. But, when unrestrained and disrespectful to the court, it is a liability, sabotaging efforts to advance a client's agenda. Knowledge of courtroom rules and code of conduct, as well as the ability to expertly navigate them while zealously advocating for her client, is what makes an advocate effective, Clarke, *supra* at 963.

Further, unprofessional conduct can change the quality of justice itself. Clarke, *supra* at 961. Commitment to decorum in the courtroom preserves the power and professionalism of the judiciary and the legal profession because simply stated, "[C]ourts are respected if they are respectable." *Id.*

That is, "society allocates decisional authority and its functions to the authorities that it accepts." *Supra* at 962. So, "if trial lawyers by their courtroom conduct state their own disrespect for judges in clearly spoken words, no one can expect others to have respect for our judicial system." *Supra.*

Thus, attorneys must balance zealous advocacy with requisite self-restraint, respect and discipline. An Order of the same date and consistent with this Memorandum Opinion shall follow.