**VENTURES MANAGEMENT CO., INC.**

v.

**Anthony A. GERUSO et al.**

**No. 79–311–Appeal.**

Supreme Court of Rhode Island.

Aug. 25, 1981.

Tobin, LeRoy & Silverstein, John P. Barylick, Providence, for plaintiff.

Robert M. Geruso, Woonsocket, for defendants.

OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment of the Superior Court declining to hold the defendant, Anthony A. Geruso, in civil contempt for failure to obey an injunction contained in a final judgment of the Superior Court entered on August 15, 1978. We affirm. The facts underlying the contempt motion are as follows.

Anthony A. Geruso was formerly an officer and director of the plaintiff, Ventures Management Company, Inc. (Ventures). Action was brought by Ventures in order to enjoin defendant from competing with Ventures in violation of defendant's employment agreement and his fiduciary obligations as an officer and a director of plaintiff. Prior to the scheduled hearing for preliminary injunction, the parties reached agreement on the issues in litigation and presented a final judgment to the court, which judgment was entered on August 15, 1978. The final judgment provided in part:

"All said Defendants are hereby enjoined for the period of one (1) year from the date hereof [August 15, 1978] from either directly or indirectly, either for themselves or as a member of a partnership or as a stockholder, investor, officer, or director of a corporation or as an employee, agent, associate or consultant of any person, partnership or corporation, competing with Plaintiff by entering into any business relationship whatsoever with any entity with respect to the operation, maintenance or management of the residential or commercial units of real estate commonly known by the following demominations:

"* * *

"I. Douglas Manor, Douglas Avenue, North Providence, Rhode Island."

At the time of defendant Geruso's employment with Ventures, plaintiff was the management agent for Douglas Manor Housing Project (Douglas), a so-called section-8 project regulated by the United States Department of Housing and Urban Development. After defendant's termination of employment with Ventures, a new management agent was retained by Douglas. Wenscott Properties Management, Inc. (Wenscott) became management agent on September 15, 1978. Thereafter, Wenscott retained Precise Data Systems, Inc. (Precise) to do the bookkeeping that was required of Wenscott by virtue of its management contract. In addition, Precise prepared Wenscott's payroll. The defendant was the president and a member of the board of directors of Precise. It is on the basis of this relationship that plaintiff contended that defendant was in violation of the judgment of August 15, 1978. The plaintiff contended in Superior Court that defendant was guilty of both civil and criminal contempt. The trial justice in an order dated May 16, 1979, separately denied plaintiff's requests that defendant be adjudged in civil and criminal contempt. The plaintiff appeals only from the order denying the request to adjudge defendant in civil contempt. In support of their respective positions, the parties raise two major issues.

I

The defendant first asserts that plaintiff's appeal must fail on the ground that the Fifth Amendment ban on double jeopardy prevents an appeal in this case. The defendant concedes that an appeal may be had from the denial of a petition to adjudge a party in civil contempt, *Jastram v. McAuslan*, 29 R.I. 390, 71 A. 454 (1909),[1] but appears to argue that the nature of this case is such that it is wholly criminal in character. It is well settled that the ban on double jeopardy applies to crimes and is based upon the common-law pleas of *autrefois acquit* and *autrefois convict*. *Ex parte Lange*, 85 U.S. (18 Wall.) 163, 172, 21 L.Ed. 872, 877 (1874). The line between civil con-

1. We have reviewed on many occasions holdings of the Family and Superior Courts declining to adjudge spouses in civil contempt or to punish for alleged failure to obey the terms of court decrees. *See, e.g., Shonting v. Shonting*, 118 R.I. 475, 374 A.2d 797 (1977); *King v. King*, 114 R.I. 329, 333 A.2d 135 (1975); *Hartwich v. Hartwich*, 82 R.I. 54, 105 A.2d 821 (1954).

tempt and criminal contempt is often not clearly defined, and the two concepts may overlap. *Nelson v. Progressive Realty Corp.*, 81 R.I. 445, 448, 104 A.2d 241, 242–43 (1954).

In *School Committee v. Pawtucket Teachers Alliance*, 101 R.I. 243, 221 A.2d 806 (1966), we expanded upon the distinction set forth in *Nelson* and indicated that the principal demarcation between criminal and civil contempt was that in criminal contempt the purpose of the sanctions imposed is to punish the contemnor for an act in derogation of the authority and dignity of the court itself, whereas in civil contempt the purpose of the sanction imposed is to coerce the defendant into compliance with the court order and to compensate the complaining party for losses sustained as a result of the violation of the court order. *Id.* at 254–55, 221 A.2d at 813–14; *see Shillitani v. United States*, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *United States v. United Mine Workers*, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 536, 55 L.Ed. 797 (1911). There is no question that in the case at bar plaintiff sought to have defendant held in civil contempt as well as in criminal contempt. Since the trial justice found defendant not guilty of either contempt, no sanction was imposed. However, there is nothing in the nature of the case which would have made it impractical for the trial justice, had he found a civil contempt, to have imposed coercive or compensatory, as opposed to punitive, sanctions. In short, there is nothing about the case which would have made it inappropriate as a vehicle for civil contempt had the necessary predicate findings been made. We reject the theory that the case is exclusively criminal in nature. As a consequence, since the concept of double jeopardy is wholly inapplicable to the issue of civil contempt, the judgment is properly appealable to this court, *Jastram v. McAuslan, supra.*

## II

The plaintiff argues that the trial justice erred in failing to find defendant in civil contempt by reason of the ambiguity of that portion of the final judgment which was alleged to have been violated. In essence, plaintiff asserts that the judgment was not ambiguous and met all of the requirements for an enforceable injunction set forth in *Sunbeam Corp. v. Ross-Simons, Inc.*, 86 R.I. 189, 134 A.2d 160 (1957). In that case this court observed:

"The law is well settled that an injunction to be enforceable by contempt proceedings should be clear and certain and its terms should be sufficient to enable one reading the writ or order to learn therefrom what he may or may not do thereunder. The party enjoined should not be punished for disobedience of an order which is capable of a construction consistent with innocence.

"The terms of the order should be specific, clear and precise so that one need not resort to inference or implications to ascertain his duty or obligation thereunder. As the respondent must obey the order at his peril it should be clear, definite and explicit so that an unlearned man can understand its meaning. [Citations omitted.]" *Id.* at 194, 134 A.2d at 162–63.

In the case at bar it is undisputed that evidence was required to be introduced in order to define the term "management," which was one of the essential elements to be construed in order to determine whether defendant's association with a bookkeeping firm constituted a violation of the judgment. In the event that a document needs to be interpreted by the use of extrinsic evidence, normally such a finding is preceded by a holding that the document is ambiguous. *See Sco-Mar, Inc. v. Rhode Island Tool Co.*, 115 R.I. 516, 349 A.2d 609 (1976); *Farrell v. Meadowbrook Corp.*, 111 R.I. 747, 306 A.2d 806 (1973); *Hawkins v. Smith*, 105 R.I. 669, 254 A.2d 747 (1969).

In the instant case plaintiff in its brief cites the testimony of Mr. Robert F. Roberti, the president of Wenscott, in support of a definition of management broad enough to include the providing of bookkeeping and

payroll services. Without doubt, bookkeeping and payroll services are tools of management, but the real question is whether the providing of such services through an independent firm such as Precise constituted participation in management in such a capacity as to violate the terms of the judgment.

An examination of the critical portion of this judgment discloses two terms that require definition. One term is the word "management" and the second term is the word "competition." We are of the opinion that neither of these terms is so crystal clear when applied to the relationship of Precise with Wenscott as to meet the standards set forth in *Sunbeam Corp. v. Ross-Simons, Inc., supra.* We do not believe that the terms of this order are so specific, clear, and precise that one need not resort to inference or implication to ascertain his duty or obligation thereunder. Even though, as plaintiff contends, defendant is not an unlearned man, the doctrine of *Sunbeam* is not to be measured by the sophistication of the party defendant since those responsible for the management and direction of Ross-Simons were not specifically found to be unlearned. Thus, the "unlearned man" in the *Sunbeam* test is like the "reasonable man" in negligence cases. This hypothetical person is used for measurement of clarity in this instance, just as the reasonable man is used for the measurement of prudence in negligence cases.

We believe that the trial justice was correct in his finding that the conduct of defendant when measured by the terms of the judgment was susceptible of a construction consistent with innocence.

In the light of our disposition of this issue, it is unnecessary to consider the additional issue raised by the plaintiff in respect to failure of proof on the question of competition.

For the reasons heretofore stated, the appeal of the plaintiff is denied and dismissed, the judgment of the Superior Court is affirmed, and the papers in the case may be remanded to the Superior Court.