**In re CARRIE T.**

86–154–Appeal.

Supreme Court of Rhode Island.

Oct. 27, 1986.

Laureen Q. D'Ambra, Dept. for Children & Their Families, Providence, for petitioner.

William F. Reilly, Public Defender, Barbara Hurst, Asst. Public Defender, Providence, Lincoln, for respondent.

Robert D. Oster, Oster Groff & Prescott, guardian at litem.

## OPINION

FAY, Chief Justice.

This is an appeal from a Family Court adjudication of contempt as a result of which the respondent, a juvenile, was ordered confined at the Rhode Island Training School for Girls.

Carrie T. first came to the attention of the Family Court in September 1982 when her parents complained that they were unable to prevent her from running away from home; she was nearly thirteen at the time. In January 1985 she was adjudicated a wayward child, after admitting sufficient facts to permit such a finding. She was placed in the temporary custody of the Department for Children and Their Families (DCF) for placement.

On January 6, 1986, DCF filed a second wayward petition in the Family Court alleging that Carrie was habitually disobedient—that she had been absent from her placement without permission, had not returned, and would not advise DCF where she was staying. At an emergency hearing, Carrie was again ordered released to the custody of DCF for placement, the hearing justice checking off a box on the decree form that indicated that Carrie was "advised that any violation of the rules and regulations of any institution/placement in which [she] is placed * * * may be considered a violation of a valid court order and may result in commitment to the Rhode Island Training School * * *." The case was continued for pretrial on January 24, 1986 and for trial on February 3, 1986.

On January 10, 1986, noting that Carrie was again on the run, the same Family Court judge ordered a capias to issue, pursuant to which Carrie was brought before the court on January 22, 1986. At this time, the judge found as a fact that Carrie was "in violation of a court order and in contempt of a court order" in that she had run from placement and that she was a danger to herself and the community; he ordered that she be held at the Training School until DCF filed a proper petition.[1]

At the pretrial hearing on the second wayward petition on January 24, 1986, Carrie again admitted to facts sufficient for a wayward adjudication. She was released from the Training School and placed in DCF custody.

The parties agree that at the time Carrie was found in contempt, the only matter pending before the court was a petition alleging disobedience. No petition alleging the violation of a court order had been filed, nor had Carrie been charged with contempt.[2] Carrie contends that the Family

---

1. At this hearing, counsel for DCF indicated that charges "may be forthcoming" against Carrie, but she did not elaborate about what those charges would be.

2. General Laws 1956 (1981 Reenactment) § 14–1–11, as amended by P.L.1985, ch. 98, § 1, in pertinent part specifies the conditions under which a juvenile can be detained at the Training School:

Court justice exceeded his authority in summarily holding her in contempt and detaining her without affording her notice and a hearing on that charge. We agree.

■ Although the sentence imposed in this case was not fixed, this contempt was criminal in nature. The penalty was punitive rather than coercive and compensatory, *Ventures Management Co. v. Geruso*, 434 A.2d 252, 254 (R.I.1981), and the hallmark of civil contempt—the ability to purge the contempt at will—was absent. *Melechinsky v. Laurie*, 119 R.I. 708, 711, 382 A.2d 1316, 1318 (1978).

■ Only a narrow class of criminal contempts may be punished summarily, without a hearing. Summary adjudication is permissible only if the conduct constituting the contempt is "direct," taking place fully in the presence of the court, and, further, "immediate punishment is essential to prevent 'demoralization of the court's authority' before the public." *In re Oliver*, 333 U.S. 257, 275, 68 S.Ct. 499, 509, 92 L.Ed. 682, 695 (1948). Our own cases have applied this rule stringently. *See Peltier v. Peltier*, 120 R.I. 447, 388 A.2d 22 (1978) (lateness to court is not so wholly in the court's presence as to be direct contempt); *State v. Costantino*, 107 R.I. 215, 266 A.2d 33 (1970) (spectator's comment did not offend the dignity of the court and was not punishable summarily).

■ In this case, the alleged contumacious act was Carrie's failure to remain in placement. By definition, this conduct was not in the presence of the court and could not be punished without the full panoply of due-process rights appropriate to indirect, criminal contempt. It is beyond dispute that an alleged criminal contemnor has a due-process right to the trappings of a criminal charge: written notice denominating the contempt as criminal, a hearing for which there is adequate opportunity to prepare a defense, competent evidence to support the charge, and a standard of proof beyond a reasonable doubt. *In re Oliver*, 333 U.S. at 275, 68 S.Ct. at 508–09, 92 L.Ed. at 695; *State v. Wilson*, 118 R.I. 627, 629, 375 A.2d 931, 932 (1977); *Coolbeth v. Berberian*, 116 R.I. 188, 354 A.2d 120 (1976). Although the alleged contemnor in this case was a juvenile, these due-process rights were no less applicable. *See In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

The respondent's appeal is sustained; the judgment appealed from is vacated, and the case is remanded to the Family Court for proceedings consistent with this opinion.[3]

"No child shall be ordered detained at the Training School, unless there is pending against such child a petition setting forth facts which would constitute a felony or misdemeanor if committed by an adult or which alleges a violation of a valid court order or unless the child is adjudged in contempt of court."
In this instance, the Family Court justice found Carrie in contempt for violating his order regarding placement.

3. This matter originally came before this court on the show-cause calendar. Finding the issue raised to merit comment, we decided to publish this opinion rather than issue an order summarily sustaining respondent's appeal.