Steven BIRON et al.

v.

Dennis FALARDEAU.

No. 2000–421–Appeal.

Supreme Court of Rhode Island.

May 31, 2002.

Ramaram Suryanarayan, Providence, for Plaintiff.

Joel D. Landry, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on May 7, 2002, pursuant to an order that directed the parties to appear to show cause why the issues raised by

this appeal should not summarily be decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts pertinent to this appeal are as follows.

The defendant, Dennis Falardeau (defendant), appeals from a Superior Court order, finding him in contempt for the violation of a November 17, 1997 restraining order.[1] The defendant and plaintiffs, Steven Biron (Steven) and Rachel Biron (Rachel) (collectively referred to as plaintiffs), own adjacent properties in North Smithfield. However, the relationship between the parties has been less than neighborly, involving various legal and personal disputes throughout the years.

The conduct that led to the restraining order violation occurred on August 15, 1998. The facts are largely in dispute. According to Steven, both he and defendant had been doing yard work on their respective properties throughout the day. At approximately 2 p.m., without any provocation, defendant began swearing at Steven. Steven then replied "why don't you be a man instead of swearing * * * and * * * come over [here] and say it to my face." Steven testified that defendant responded "I don't know why you're spending your money fixing your yard because when I get done with you, I will have everything."

After the altercation, Steven went inside his home and spoke with his wife, Rachel, who had overheard the confrontation. After discussing the situation with her, Steven called the North Smithfield police and reported the incident. Consequently, the police arrived and arrested defendant.

Hearings were conducted to determine whether defendant had violated the November 17, 1997 restraining order. Not surprisingly, defendant described a different set of circumstances. The defendant testified that it was Steven who initiated the contact. The defendant stated that, while listening to the radio through headphones and driving his tractor, he noticed Steven mumbling something. In an effort to hear him better, defendant removed the headphones. He testified that Steven said, "[w]hy don't you come on my property and we'll settle this once and for all." The defendant said that he told Steven that he would not indulge his wishes, and instead, would use legal methods to settle the dispute. At the end of this confrontation, defendant said, both exchanged expletives, and defendant returned to his garage.

Steven also testified to a number of other instances concerning defendant's behavior, including a similar instance in which defendant taunted Steven while he did yard work. In addition, Steven testified that at midnight one evening, defendant aimed his headlights at plaintiffs' window and repeatedly sounded the horn while driving down defendant's driveway. In another incident, while plaintiffs held an outdoor party, defendant positioned his vehicle facing plaintiffs' property and stared at plaintiffs and their guests. In another incident, Steven testified, defendant used a water pump on his property to direct water to plaintiffs' yard. Steven also testified that after his cat had been missing for one week, the cat returned with glue covering its eyes and ears. The defendant denied these allegations.

■ At the end of the hearings, each party submitted a memorandum addressing the burden of proof for a finding of

---

1. Although the order was entitled "preliminary injunction," it stated that defendant was "restrained from interfering, molesting, harassing or contacting the plaintiff."

contempt. More than one year later, on February 28, 2000, the trial justice issued an order adjudging defendant in contempt. The order directed defendant to either pay $2,000 to the registry of the court or to plaintiffs to purge this finding. The defendant timely appealed.

The defendant argues that there is insufficient evidence to find that he willfully violated the restraining order, and that the trial justice thus erred in finding him in criminal contempt. We first note that defendant's argument is misplaced. The instant case involves a finding of civil, not criminal, contempt. "[T]he hallmark of civil contempt [is] the ability to purge the contempt at will * * *." *Durfee v. Ocean State Steel, Inc.*, 636 A.2d 698, 704 (R.I.1994) (quoting *In re Carrie T.*, 516 A.2d 883, 885 (R.I.1986)). "Civil contemnors carry 'the keys of their prison [cell] in their own pockets.'" *Id.* (quoting *Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 1534, 16 L.Ed.2d 622, 626 (1966)). Furthermore, "[c]riminal contempt punishes the contemnor for an act insulting or belittling the authority and dignity of the court whereas in civil contempt the purpose of the sanction imposed is to coerce the contemnor into compliance with the court order and to compensate the complaining party for losses sustained." *Id.* (citing *Ventures Management Co. v. Geruso*, 434 A.2d 252, 254 (R.I. 1981)).

In the instant case, it is clear that the trial justice found defendant in civil contempt. The plaintiff was given the opportunity to purge himself of the contempt order. Furthermore, because the $2,000 was directly payable to plaintiffs, the penalty was designed as compensation for plaintiffs' loss.

"Civil contempt * * * is established when it is proved by clear and convincing evidence that a lawful decree was violated." *Durfee*, 636 A.2d at 704 (quoting *Trahan v. Trahan*, 455 A.2d 1307, 1311 (R.I.1983)). "A finding of contempt is within the sound discretion of the trial justice." *Id.* (citing *Brierly v. Brierly*, 431 A.2d 410, 412 (R.I.1981)). "Findings of fact in a contempt hearing will not be disturbed unless they are clearly wrong or the trial justice abused his or her discretion." *Id.* (citing *Brierly*, 431 A.2d at 412). In the instant case, there is sufficient evidence in the transcripts provided to show that defendant violated the original restraining order by engaging in contact with plaintiffs that amounted to more than mere coincidence. *See State v. Conti*, 672 A.2d 885, 886–87 (R.I.1996). Thus, the trial justice did not err, nor did he abuse his discretion in holding defendant in civil contempt.

The defendant also argues that the restraining order on November 17, 1997, did not possess the requisite specificity to be enforceable. We disagree.

It is well settled that for a restraining order to be enforceable "by contempt proceedings [it] should be clear and certain and its terms should be sufficient to enable one reading the writ or order to learn therefrom what he may or may not do thereunder." *Ventures Management Co.*, 434 A.2d at 254 (quoting *Sunbeam Corp. v. Ross–Simons, Inc.*, 86 R.I. 189, 194, 134 A.2d 160, 162 (1957)). Furthermore, "[t]he terms of the order should be specific, clear and precise so that one need not resort to inference or implications to ascertain his duty or obligation thereunder." *Id.* (quoting *Sunbeam Corp.*, 86 R.I. at 194, 134 A.2d at 162).

In the instant case, the terms of the order restraining the defendant from "interfering, molesting, harassing or contacting" the plaintiffs was sufficiently clear for the defendant to understand that he was to

refrain from contacting the plaintiffs as he did. The conduct of the defendant, as determined by the trial justice, was at the core of what was prohibited by the restraining order. As such, the restraining order is enforceable.

Accordingly, the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed. The papers of the case are returned to the Superior Court with our decision endorsed thereon.