# PEOPLE OF THE VIRGIN ISLANDS IN THE MATTER OF:
## M.R. and W.V., Minors.

S. Ct. Civil No. 2015-0048

Supreme Court of the Virgin Islands

February 1, 2016

335

PAMELA L. COLON, ESQ., Law Offices of Pamela L. Colon, St. Croix, USVI, KYE WALKER, ESQ., The Walker Legal Group, St. Croix, USVI, *Attorneys for Appellant*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(February 1, 2016)

PER CURIAM. Appellant Kye Walker, Esq., appeals from the Superior Court's May 21, 2015 opinion and order, which held her in criminal contempt for remarks she made at a May 8, 2013 hearing. For the reasons that follow, we reverse the judgment below.

## I. BACKGROUND

On January 11, 2010, the People of the Virgin Islands initiated an action to temporarily transfer custody of a minor, M.R., from his mother to the Department of Human Services ("DHS") because it believed he was in danger of abuse and neglect. The Superior Court, in a January 22, 2010 order, appointed Walker to represent the mother in the proceeding. Eventually, the People expanded the scope of the proceeding to also seek temporary custody of the mother's other child, W.V. Ultimately, the Superior Court removed both M.R. and W.V. from the mother's custody, and over the next several years the Superior Court held multiple review hearings to determine if the temporary custody arrangement should continue or be modified.

The Superior Court held a hearing on May 8, 2013, to determine whether the mother should be reunited with her children. In addition to Walker and counsel for the People, the Superior Court permitted a guardian ad litem and representatives from DHS and Court Appointed Special Advocates ("CASA") to participate in the hearing.

During the hearing, the People noted that the mother had missed several court-ordered family counseling sessions, and took the position that the mother could be reunified with M.R. "sooner rather than later, so long as we get those family sessions complete . . . because we cannot place M.R. in her custody unless and until we are confident that it is going to be as successful as possible." (J.A. 53-54.) Walker responded by indicating that "[t]here was difficulty with the family counseling" because "[t]ransportation to Christiansted for sessions was difficult for [the mother], and she did not establish a permanent residence up until two weeks ago," but stated that the mother was now "willing and able to engage in family sessions." (J.A. 58.)

The Superior Court proceeded to hear from the guardian ad litem and the CASA representative, who both urged that the mother be immediately reunified with M.R. The CASA representative, however, stated that although she did not recommend delaying reunification, she believed that the mother had to attend counseling. In response, the Superior Court questioned the mother's failure to attend family counseling, observing that "it seems so simple, just do the counseling." (J.A. 64.) When Walker was permitted to respond, the following dialogue ensued, as is reflected in

338

the hearing transcript:

> WALKER: I also take issue with the Court's comment that it is very easy for [the mother] to attend these family sessions. She attended three sessions, one was on the phone, two were in person, and I believe two of them were with M.R. and [the counselor]. I think it's easy for people to sit in this room and pass judgment on [the mother], and sit on the bench and drive a government car and remark as to what is easy for [the mother] to do.
>
> [The mother] is —
>
> THE COURT: Attorney Walker —
>
> WALKER: If I may be heard.
>
> THE COURT: Attorney Walker, no, you may not be heard. Can you remove her from here right now.
>
> (Thereupon, Attorney Walker returned to her seat at counsel table.)
>
> THE COURT: Attorney Walker, I'd like you — for you to leave, please. You are being disrespectful to the Court.
>
> WALKER: I'm not being disrespectful to the Court. You're making remarks about my client that have nothing to do with the facts that have been made. For the Court to sit there and say that it's easy —
>
> THE COURT: Oh, marshal, please remove her.
>
> WALKER: Not a problem.
>
> THE COURT: I don't know what car the Court drives has to do with this case. I just don't understand. It's very unprofessional and unnecessary.
>
> WALKER: Then I have to file a motion to recuse you because you're making comments about my client that are not in evidence.
>
> (Thereupon, Attorney Walker was escorted out of the courtroom.)

(J.A. 72-73.)

After the marshal escorted Walker from the courtroom, the Superior Court nevertheless proceeded with the hearing, with the mother unrepresented by counsel. The Superior Court heard additional arguments from the People and the CASA representative, and then orally announced that it would continue the existing temporary custody arrangements for both M.R. and W.V. It further ordered the mother to continue to attend family counseling, and stated that it would hold a hearing at a future date on the reunification issue. Thereafter, the Superior Court discussed various

other issues — such as sibling visits, random drug screening, and developing a transition plan — with the People, guardian ad litem, and the CASA and DHS representatives, until it ultimately adjourned the hearing.

At 5:35 P.M. later that same day, the Superior Court issued, and caused to be delivered by fax, an order directing Walker to appear at a hearing at 9:00 A.M. the next day "to show cause as to why she should not be held in contempt and sanctioned." (J.A. 96.) Walker appeared at the hearing as ordered, accompanied with her retained counsel. Once the hearing commenced, the Superior Court read pertinent portions of the hearing transcript that had been prepared by a court reporter. However, the Superior Court also made observations that were not corroborated by the transcript, such as that "Walker raised her voice to the Court as she was speaking" and that when "she was asked to leave, she went and sat down, turned her back to the Court, folded her arms and commenced to pout in the direction of the wall." (J.A. 104.) Before hearing any arguments or evidence from Walker, the Superior Court also stated that "[t]his interchange was disrespectful to the Court," "disrupted the proceedings because the proceedings had to be halted," and that "Walker . . . brought about a situation where her client was left unrepresented." (J.A. 104.)

When the Superior Court permitted Walker to proceed, she objected to the lack of sufficient notice, as well as the fact that she had not been provided with a copy of the transcript the Superior Court had read from. Walker requested the full transcript and a continuance so that she could prepare a defense, and the Superior Court, after initially resisting the requests, ultimately agreed to both requests.

The show cause hearing reconvened on May 24, 2013. At the start of the hearing, Walker noted that it was unclear from the show cause order whether the Superior Court was contemplating holding her in civil or criminal contempt. However, Walker argued that, to the extent the Superior Court was considering a criminal contempt sanction, due process required that the judge recuse herself, that the matter be assigned to a different judge, and that the case not be heard summarily. The Superior Court rejected these arguments, and Walker proceeded with her defense.

Walker presented testimony from the mother — who testified to her overall relationship with Walker — and also testified on her own behalf. During her testimony, Walker explained how passionate she was about the mother's case, and that she believed the Superior Court's comment about how "easy" it would be for the mother to go to her counseling sessions

"was unfair because very few things are easy for [the mother] to do . . . given her circumstances." (J.A. 143.) She stated that, had she not been removed from the courtroom, she intended to present testimony "to explain what was going on with [the mother]," including "that she was somewhat homeless at the time . . . and she did not have the transportation to make the appointments." (J.A. 144.) Although she conceded that she responded "in a very inappropriate and [in]articulate manner," and apologized for her remarks, Walker maintained that her comment was intended as advocacy in order to "use an analogy." (J.A. 144-45.) After hearing closing argument, the Superior Court announced that it would take the matter under advisement.

On May 21, 2015 — more than two years after the date the alleged contemptuous conduct occurred — the Superior Court issued its decision.[1] *In re M.R.*, 62 V.I. 396 (V.I. Super. Ct. 2015). In its opinion, the Superior Court held Walker in criminal contempt on the grounds that she obstructed the administration of justice in violation of title 14, section 581(1) of the Virgin Islands Code, and violated a court order in violation of section 581(3). *Id.* at 408. The Superior Court further concluded "that the direct nature of the contemptuous conduct triggers the expedited mechanism of summary contempt," and again declined to assign the matter to a different judge. *Id.* at 404, 408, 410. Together with the criminal contempt finding, the Superior Court ordered Walker to pay $300 to the court as a monetary sanction. *Id.* at 410, 412.

Walker timely filed a notice of appeal with this Court on May 21, 2015, which she also served on the Superior Court judge presiding over the underlying matter. However, the child custody proceeding against the mother remained ongoing. Apparently in light of that consideration, Walker, on behalf of the mother, filed a motion for the Superior Court judge to recuse herself on May 26, 2015, in advance of a hearing that had been previously set for May 27, 2015. The motion stated that the May 21, 2015 opinion contained many derogatory statements about both Walker and the mother that were unsupported by the record, and made it appear

---

[1] Although the Superior Court dated its opinion May 8, 2015, the Clerk of the Superior Court did not enter it on the docket until May 21, 2015. *See* V.I.S.Ct.R. 5(a)(9) ("A judgment or order is entered . . . when it is entered in the docket in compliance with Superior Court Rule 49."); SUPER. CT. R. 49 ("Upon determination of an action by a judge, the judge shall sign the judgment which shall take effect . . . upon entry by the clerk.").

as if the Superior Court had prejudged the case. For example, the motion noted that the opinion had concluded that the mother had "fail[ed] to heed the authority of the Court and comply with its conditions," that the mother's children had been "removed from [her] care due to incidents of uncontrolled anger and violence," and had described Walker as the mother's "personal ally" who is in "a powerfully influential position in relationship to [her]." (J.A. 161.) Moreover, the motion noted that, in holding Walker in contempt, the Superior Court stated in its opinion that Walker's "offensive conduct can unfairly prejudice her client by aggravating the judge to the extent that h[er] judgment is unconsciously affected," and that such comments may be "a liability, sabotaging efforts to advance a client's agenda." (J.A. 161-62.)

At the start of the May 27, 2015 hearing, the Superior Court orally denied the motion to recuse. However, before calling its first witness to testify, counsel for the People requested an in-chambers hearing. At the hearing, the People's counsel stated that she had "been struggling with how we should proceed this morning," and stated that "as an officer of the court . . . that we should not proceed with this matter today" because of the "the most recent opinion issued in this case." (J.A. 173-75.) After the Superior Court repeatedly questioned the People as to why it believed it should not proceed, Walker reiterated her request for recusal, and objected to the fact that the motion for recusal had been orally denied without the judge stating the reasons for the denial. (J.A. 179.) Shortly thereafter, the CASA representative joined in the request that the hearing not go forward, because "the collateral issues are creeping into the very important issue of the disposition of this case," which "is going to have life-long impact on this particular child, a 5-year old." (J.A. 180.)

The Superior Court took a brief recess after hearing from the parties. When the hearing resumed, the Superior Court announced "that it can be fair and it can be impartial to the facts and to the parties in this case," but after "taking into consideration the various parties' position[s] . . . will recuse itself," and instructed the parties "to await a written order indicating at length the court's position." (J.A. 185.) To date, such a written order has not issued, and it does not appear that the case has been reassigned to a different judge.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court." V.I. CODE ANN. tit. 4, § 32(a); *see also* 48 U.S.C. § 1613a(d) ("all appeals from the decisions of the courts of the Virgin Islands established by local law" shall be heard by the local appellate court). Although the underlying child custody proceeding involving the mother remains ongoing, this Court has concluded that "an order finding contempt against an attorney who is not a party to the underlying litigation is immediately appealable." *In re Rogers*, 56 V.I. 325, 334 (V.I. 2012) (collecting cases). Because Walker appeals from an order of contempt, and is a non-party to the action below, we possess jurisdiction over this appeal.

"The standard of review for our examination of the Superior Court's application of law is plenary, while the trial court's findings of fact are reviewed for clear error." *In re Moorhead*, 63 V.I. 689, 692 (V.I. 2015) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)). "However, the Superior Court's decision to hold an individual in contempt is reviewed only for abuse of discretion." *In re Meade*, 63 V.I. 681, 684 (V.I. 2015) (citing *In re Najawicz*, 52 V.I. 311, 328 (V.I. 2009)). The Superior Court abuses its discretion when it makes a decision that " 'rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact.' " *Stevens v. People*, 55 V.I. 550, 556 (V.I. 2011) (quoting *Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)).

### B. The Contempt Sanction

■■ As this Court has recently reiterated

"[T]he Superior Court has both statutory and inherent power to compel obedience to its orders by way of contempt." *Rogers*, 56 V.I. at 334 (citing 4 V.I.C. §§ 243(4), 281; *In re Kendall*, 55 V.I. 888, 897 (V.I. 2011)). A contempt sanction may be either civil or criminal in nature. A civil contempt sanction is "intended to enforce the rights of private parties [and] to compel obedience to orders and decrees," whereas the purpose of a criminal contempt sanction is "the vindication of the dignity and authority of the court." *Najawicz*, 52 V.I. at 326 (quoting *U.S.*

*Steel Corp. v. Fraternal Ass'n of Steel Haulers*, 601 F.2d 1269, 1273 (3d Cir. 1979)). "A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *In re McIntosh*, S. Ct. Civ. Nos. 2012-0013, 0025, 2013 V.I. Supreme LEXIS 11, at *11 (V.I. Mar. 14, 2013) (unpublished) (quoting *In re Burke*, 50 V.I. 346, 352 (V.I. 2008)). However, to be held in criminal contempt for violating a court order, it must be established, beyond a reasonable doubt, that the contemnor willfully disobeyed the order. *Kendall*, 55 V.I. at 914 (citing *United States v. Providence Journal Co.*, 485 U.S. 693, 701-02, 108 S. Ct. 1502, 99 L. Ed. 2d 785 (1988)). To prove willfulness, the contemnor must "know[] or should reasonably be aware that his conduct is wrongful." *In re Kendall*, S. Ct. Misc. No. 2009-0025, 2010 V.I. Supreme LEXIS 73, at *29 (V.I. July 16, 2010) (unpublished) (quoting *Pennsylvania v. Local Union 542, Int'l Union of Operating Eng'rs*, 552 F.2d 498, 510 (3d Cir. 1977)).

*Meade*, 63 V.I. at 684. To determine whether an individual has been held in civil or criminal contempt, this Court first looks to the Superior Court's findings, and in the case of any doubt will presume a finding of civil as opposed to criminal contempt. *See Moorhead*, 63 V.I. at 694 (citing *Pro-Choice Network of W. New York v. Walker*, 994 F.2d 989, 994 (2d Cir. 1993)). In its May 21, 2015 opinion, the Superior Court stated that it "imposes a Three-hundred dollars ($300.00) sanction upon Attorney Kye Walker for summary contempt," and that "[s]uch sanction is characteristically criminal in nature, because it is intended to address past behavior, rather than secure future compliance." *In re M.R.*, 62 V.I. at 410 (citing *In re A.D.*, 41 V.I. 65, 69 (V.I. Super. Ct. 1999)). Because the Superior Court expressly characterized its contempt sanction as criminal, we take it at its word and analyze it as such. *See Meade*, 63 V.I. at 682.

The Superior Court identified two separate grounds for holding Walker in criminal contempt: obstructing the administration of justice in violation of 14 V.I.C. § 581(1), and violating a lawful court order in violation of 14 V.I.C. § 581(3). Each charge is addressed in turn.

### 1. *Obstruction of the Administration of Justice*

■ "[C]riminal contempt of court that obstructs the administration of justice has generally been defined as any willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute." *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996) (citing BLACK'S LAW DICTIONARY 319 (6th ed. 1990); *People v. Javaras*, 51 Ill. 2d 296, 281 N.E.2d 670, 671 (1972); *Hirschfeld v. Superior Court*, 184 Ariz. 208, 908 P.2d 22, 25-26 (1995)). "[O]bstruction of the administration of justice should 'not be confused with obstruction of justice. Justice may be obstructed by mere inaction, but obstruction of the administration of justice requires something more — some act that will interrupt the orderly process of the administration of justice, or thwart the judicial process.' " *In re Kendall*, 712 F.3d 814, 828, 58 V.I. 718 (3d Cir. 2013) (quoting *United States v. Warlick*, 742 F.2d 113, 115-16 (4th Cir. 1984)). "The time consumed by the contempt investigation itself is not considered in this analysis." *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 968 F.2d 523, 532 (5th Cir. 1992) (citing *United States v. Oberhellmann*, 946 F.2d 50, 53 (7th Cir. 1991)).

■ In its May 21, 2015 opinion, the Superior Court concluded that Walker obstructed the administration of justice by "arguing with the court in aggravated and elevated tones" and "by personally criticizing a judge in open court." *In re M.R.*, 62 V.I. at 408. We conclude that neither of these purported acts constitutes the obstruction of the administration of justice in this case.

■ First, we note that the transcript of the May 8, 2013 hearing, as prepared by the court reporter, does not reflect that Walker argued with the judge. Rather, it indicates that Walker immediately stopped speaking when the judge interrupted her, did not resume speaking again until the judge finished her remarks, ceased speaking when the judge interrupted her a second time, and then left the courtroom with the marshal when instructed to do so. (J.A. 72-73.) Although the record reflects that Walker denied the Superior Court's charge that she was being disrespectful, merely objecting to or disagreeing with a judge and succinctly stating the reasons for the objection — without more, such as interrupting the judge or using profane language — cannot form the basis for a criminal contempt sanction. *Cf. State Farm Mut. Auto. Ins. Co. v. Dowdy*, 445 F.

Supp. 2d 1289, 1292 (N.D. Okla. 2006) (acknowledging that it is proper for an attorney to make a succinct objection on the record).

██ Likewise, nothing in the transcript reflects that Walker yelled, screamed, or otherwise spoke in an elevated tone of voice. Although the Superior Court, at the May 8, 2013 contempt hearing, appeared to believe that the transcript did not accurately reflect what transpired, it is the transcript of a hearing prepared by the court reporter, and not the judge's *post hoc* personal recollections of the hearing, that constitutes the record on appeal to this Court. V.I.S.CT.R. 10(a) ("The original papers and exhibits filed in the Superior Court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the Clerk of the Superior Court shall constitute the record on appeal in all cases."); *see also Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 695 (V.I. 2015) (factual findings by the court must have "evidentiary support" in the record to be credited on appeal (quoting *Yusuf v. Hamed*, 59 V.I. 841, 857 (V.I. 2013)); *State v. King*, 306 S.C. 335, 412 S.E.2d 375, 377 (1991) (reversing contempt citation because the "record is not sufficiently clear and specific" to support judge's finding that contemnor engaged in "conduct which tends to bring authority and the administration of the law into disrespect").

██ We recognize that "[t]here will be occasions . . . where the transcript of the proceedings will not furnish a completely accurate recitation of the events which precipitated a summary conviction of contempt." *Robinson v. State*, 19 Md. App. 20, 308 A.2d 712, 717 (1973). However, there were tools available to the Superior Court to improve the accuracy of the record which were not utilized. If Walker was indeed yelling, the judge could have contemporaneously said so on the record. If the judge missed the opportunity to immediately expand the record, she could nevertheless have granted one of Walker's multiple requests to recuse herself and have the contempt matter referred to a different judge, who could have resolved any question about the transcript's accuracy after considering testimony from Walker, the judge, the court reporter, and anyone else who may have been in the courtroom at the time. Even after Walker filed her notice of appeal, the Superior Court could have utilized the procedure set forth in Supreme Court Rule 10(e), which permits a limited remand "[i]f any differences arise over whether the record truly discloses what occurred in the Superior Court."

██ The remark that the Superior Court characterizes as "criticizing a judge" also cannot constitute an obstruction to the administration of

346

justice in this instance. To be sure, Walker's remark that it is "easy for people to . . . sit on the bench and drive a government car and remark as to what is easy for [the mother] to do," (J.A. 72), may well have offended the judge. However, the record contains no evidence that this comment was so disruptive that it posed "an imminent threat to the administration of justice" so as to justify "the offended judge being judge, jury and executioner." *State v. Conliff*, 61 Ohio App. 2d 185, 401 N.E.2d 469, 474 (1978). On the contrary, given that the Superior Court had chastised the mother for not attending counseling sessions when it is "so simple" to do so, Walker's remark squarely constitutes zealous — although in this case, ineffective — advocacy that cannot form the basis for a criminal contempt conviction. *See In re Little*, 404 U.S. 553, 556, 92 S. Ct. 659, 30 L. Ed. 2d 708 (1972) (overturning lawyers' contempt convictions where " '[t]heir convictions rest[ed] on nothing whatever except allegations [they] made in motions for change of venue and disqualification [of the judge] because of [his] alleged bias' " (quoting *Holt v. Virginia*, 381 U.S. 131, 136, 85 S. Ct. 1375, 14 L. Ed. 2d 290 (1965)); *In re McConnell*, 370 U.S. 230, 236, 82 S. Ct. 1288, 8 L. Ed. 2d 434 (1962) ("While we appreciate the necessity for a judge to have the power to protect himself from actual obstruction in the courtroom . . . it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases."); *Craig v. Harney*, 331 U.S. 367, 376, 67 S. Ct. 1249, 91 L. Ed. 1546 (1947) (holding judge may not hold individual in contempt simply for using "strong language" or "intemperate language").

We also find no record support for the Superior Court's claim that Walker "brought the wheels of justice to a screeching halt as the Court had to set aside the matter at issue in order to address Walker's conduct and finally remove her from the courtroom to prevent further disruption." *In re M.R.*, 62 V.I. at 408. To sustain a conviction for criminal contempt based on obstruction of the administration of justice, it must be established — beyond a reasonable doubt — "at a minimum that the [contemnor]'s conduct had an effect on the proceedings, which presupposes a cause triggered by the attorney's acts." *Am. Airlines, Inc.*, 968 F.2d at 532 (citing *Oberhellmann*, 946 F.2d at 53). The effect, however, cannot be the contempt investigation itself. *Id.* An overreaction by a judge to otherwise permissible behavior also will not satisfy the actual obstruction requirement. *See, e.g., State v. Holland*, 1997 ME 42, 691 A.2d 196, 199 (1997) (reversing a criminal contempt conviction

because the mere act of "entering and leaving the courtroom six times within an hour while the court was conducting video arraignments," which led to the judge ordering the contemnor's removal from the courtroom, did not actually obstruct the administration of justice). Moreover, because criminal contempt is one of the most severe sanctions a court may impose, the effect on the proceedings must be "serious," rather than merely "a momentary disruption."[2] *United States v. Branch*, No. 99-50537, 2000 U.S. App. LEXIS 40660, at \*5 (5th Cir. May 5, 2000) (unpublished).

██ ██ In this case, to the extent any disruption occurred, it is attributable not to Walker, but to the Superior Court's reaction to her advocacy. An attorney has the right to make a good-faith legal argument that a judge does not approve of in presenting his or her client's case to a court. *McConnell*, 370 U.S. at 236. We can find no justification for the Superior Court to respond to Walker's fleeting remark by ordering her immediate removal from the courtroom, leaving her client unrepresented in a quasi-criminal proceeding in which her fundamental liberty interest in the care, custody, and control of her children was at stake. *See Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000); *In re R.S.N.*, 706 N.W.2d 705, 708 (2005) (holding indigent parents are entitled to court-appointed counsel in involuntary termination of parent rights proceedings); *In re Guardianship of Dotson*, 72 N.J. 112, 367 A.2d 1160, 1163 (1976) ("While it is denominated a civil matter, it is almost quasi-criminal in nature, since it seeks to terminate for cause all parental ties between the children here involved and their natural parents. . . . As such, it is deserving of special treatment."); Patricia C. Kussmann, *Right of Indigent Parent to Appointed Counsel in Proceeding for Involuntary Termination of Parental Rights*, 92 A.L.R.5th 379 (2001) (collecting cases). Thus, the Superior Court abused its discretion when it found Walker in criminal contempt to the·extent the sanction is predicated on a finding that she obstructed the administration of justice.

### 2. Violation of Lawful Court Order

██ A Virgin Islands court may hold an individual in criminal contempt for "disobedience or resistance to its lawful writ, process, order,

---

[2] For example, an attorney hiring a private investigator to engage in illegal *ex parte* communications with prospective jurors has been held to actually obstruct the administration of justice because the conduct led to, among other things, a *voir dire* of all jurors and a jury tampering investigation. *United States v. Warlick*, 742 F.2d 113, 116 (4th Cir. 1984).

rule, decree, or command." 14 V.I.C. § 581(3). To sustain a criminal contempt conviction under this statute, it must be established — beyond a reasonable doubt — that a valid court order existed and that the contemnor knew of the order yet nevertheless willfully disobeyed it. *See Kendall*, 712 F.3d at 830 (citing *Doral Produce Corp. v. Paul Steinberg Assoc., Inc.*, 347 F.3d 36, 38 (2d Cir. 2003)). "Because of this willfulness requirement, good-faith compliance is a defense to criminal contempt." *Id.* at 831 (citing *Doral Produce Corp.*, 347 F.3d at 38-39).

The Superior Court held Walker in criminal contempt under this statute for what it characterizes as "blatantly disobeying the Court in insolent disregard of its commands to leave the courtroom." *In re M.R.*, 62 V.I. at 408. We question whether an oral order directing the removal of a court-appointed attorney from the courtroom and nevertheless proceeding with the hearing — leaving the indigent mother unrepresented by counsel through no fault of her own — could ever be a "lawful writ, process, order, rule, decree, or command." 14 V.I.C. § 581(3). We need not make this determination, however, because the transcript of the May 8, 2013 hearing reflects that Walker responded "[n]ot a problem" when told to leave the courtroom, and then permitted herself to be escorted out of the courtroom by a marshal.[3] (J.A. 73.) Since the record does not support the Superior Court's conclusion that Walker refused to leave the courtroom, the Superior Court abused its discretion when it held her in criminal contempt for failure to obey a lawful order as well, and we accordingly reverse.[4]

---

[3] In its opinion, the Superior Court stated that after telling her she could not be heard and asking her to be "remove[d] . . . from here," (J.A. 72), "Walker did not leave; rather, she returned to her seat at the counsel table, crossed her arms, and turned her back to the Court," *In re M.R.*, 62 V.I. at 399. As explained above, these findings are not controlling, since not one of these descriptions of Walker's purported behavior is found in the official transcript prepared by the court reporter, and thus cannot be relied upon by this Court. *See Hodge*, 62 V.I. at 695. Nevertheless, when criminal contempt is charged on the basis that the contemnor disobeyed a lawful court order, the standard is not whether the contemnor actually complied with the order, but whether the contemnor made a good-faith effort to comply. *See Kendall*, 712 F.3d at 830-31. That Walker left the podium and returned to counsel's table in response to the command that she be removed from here, and then left the courtroom after being expressly told to do so, indicates that the initial directive for her removal may have been ambiguous, and interpreted as simply a command for her to leave the podium and sit down. Because the order was not clear, its purported violation cannot serve as a basis for a criminal contempt sanction. *See id.*

[4] In her appellate brief, Walker also contends that the Superior Court's May 21, 2015 opinion — which the Superior Court designated as "for immediate publication" — is tantamount to

## C. The Summary Contempt Procedure

 Walker also renews her argument that the judge presiding over this matter should have recused herself and provided her with the full panoply of due-process rights rather than proceeding in a summary manner. Because we conclude that there is insufficient evidence to sustain Walker's criminal contempt conviction, we ordinarily would not consider her challenge to the summary contempt procedure employed by the Superior Court, since sustaining that error would only provide the lesser form of relief of a new trial, whereas a reversal on sufficiency grounds is tantamount to an acquittal. *See Pichierri v. People*, 58 V.I. 516, 522 (V.I. 2013) (citing *Gov't of the V.I. v. Ambrose*, 453 Fed. Appx. 157, 160 (3d Cir. 2011)). This Court has, however, previously exercised its discretion to address otherwise-moot issues on the merits, such as when the impartiality of a judicial officer has been called into question, *see Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 568 n.6 (V.I. 2012), or the issue is one in which "[a]n authoritative guide for future controversies is needed," *Haynes v. Ottley*, 61 V.I. 547, 560 (V.I. 2014) (quoting *Wisnasky-Bettorf v. Pierce*, 2012 IL 111253, 965 N.E.2d 1103, 1105 (2012)); *accord In re Holcombe*, 63 V.I. 800, 834 (V.I. 2015) (appellate court may exercise supervisory power over lower court to resolve "an important, undecided issue" in order to "eliminate uncertainty and add importantly to the efficient administration of justice" (quoting *Colonial Times, Inc. v. Gasch*, 509 F.2d 517, 524, 166 U.S. App. D.C. 184 (D.C. Cir. 1975)). Because this issue may recur in other cases, and involves a question of judicial ethics and recusal — an area that this Court possesses exclusive jurisdiction to regulate, *see* 4 V.I.C. § 32(f)(2) — we exercise our discretion to address it as part of this appeal.

 We have previously acknowledged that certain conduct may be punished summarily by the Superior Court. *Rogers*, 56 V.I. at 335-39.

---

a public reprimand, in that it questions her ethics, accuses her of unprofessional conduct, and makes several factual statements that lack any evidentiary basis. Because the effect of our decision is to reverse the May 21, 2015 opinion, it is not necessary to exercise our inherent power to depublish the May 21, 2015 opinion, since the effect of the reversal in this case will be to strip it of any precedential value and preclude its citation as legal authority. *See In re Kendall*, S. Ct. Misc. No. 2009-0025, 2012 V.I. Supreme LEXIS 20, at *6 (V.I. Jan. 27, 2012) (unpublished).

Pursuant to Superior Court Rule 138,

> A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court, or in all instances of failure to obey a summons or subpoena of the court if properly served. The order of contempt shall recite the facts and shall be signed by the judge and entered of record after the defendant is given an opportunity to be heard.

"[I]n effect, the trial judge is the judge, jury and executioner with regard to direct, summary contempt findings." *In re Shafer*, 216 Ga. App. 725, 455 S.E.2d 421, 423 (1995). As a result, the summary contempt procedure is "generally disfavored," *Brooks v. United States*, 686 A.2d 214, 222 (D.C. 1996), and court rules or statutes authorizing summary contempt "must be given a narrow construction," *Commonwealth v. Corsetti*, 387 Mass. 1, 438 N.E.2d 805, 810 (1982) (citing *Widger v. United States*, 244 F.2d 103, 107 (5th Cir. 1957)).

█ If a matter does not qualify for the summary contempt procedure, the alleged contemnor must receive all of the constitutional rights ordinarily available to a criminal defendant. This includes notice of the charges, sufficient time to prepare a defense, and a hearing before a neutral fact-finder. *See In re Carrie T.*, 516 A.2d 883, 885 (R.I. 1986) (collecting cases). These requirements are memorialized in Superior Court Rule 139, which — except for a summary contempt governed by Superior Court Rule 138 — requires advance notice of the charges and the hearing date, SUPER. CT. R. 139(a), authorizes designation of the Attorney General or other attorney to serve as the prosecutor, SUPER. CT. R. 139(c), and provides that "if the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the consent of the person charged with contempt." SUPER. CT. R. 139(d).

Here, the Superior Court denied Walker's repeated requests for recusal and to proceed under Superior Court Rule 139. In its May 21, 2015 opinion, the Superior Court justified its decision by noting that Walker's conduct took place within its actual presence, and that therefore it could employ the "expedited mechanism" of Superior Court Rule 138 to "forego[] a conventional court trial." *In re M.R.*, 62 V.I. at 403. The

351

Superior Court further reasoned, because "Rule 139 is inapplicable in the instant matter," that "the same judge whose court was the subject of the alleged contempt, also presides over its disposition." *Id.* at 404.

██ ██ As a threshold matter, we note that the Superior Court erred to the extent it concluded that it could preside over the matter simply because Superior Court Rule 138 does not mandate recusal. Pursuant to statute, a judge must recuse himself or herself from a case if "it is made to appear probable that, by reason of bias or prejudice of such judge, a fair and impartial trial cannot be had before him" or her. 4 V.I.C. § 284(4). In this case, Walker alleged — both orally and in writing — that the judge should recuse herself because criticism of that very judge formed the basis for the contempt charge, meaning that "the alleged victim" would simultaneously serve as "the investigator, the prosecutor, [and] the fact finder." (J.A. 125.) Significantly, in its opinion, the Superior Court justified its criminal contempt sanction by stating that

> offensive conduct can unfairly prejudice her client by aggravating the judge to the extent that his judgment is unconsciously affected. . . . Thus, zealous advocacy when tempered and strategic is a powerful asset. But, when unrestrained and disrespectful to the court, it is a liability, sabotaging efforts to advance a client's agenda.

*In re M.R.*, 62 V.I. at 412 (internal citation omitted). Since the Superior Court told Walker that she was "being disrespectful to the Court," (J.A. 72), and itself recognized that its own judgment could be unconsciously affected by such disrespect to the detriment of Walker and her client, it is not clear how the "clear probability" standard under section 284(4) was not satisfied,[5]

---

[5] In reaching this decision, we do not intend to imply that the summary procedure codified in Superior Court Rule 138 may never be utilized when the contemnor has filed a motion for a judge's recusal. As we shall soon explain, this matter should have been adjudicated as a non-summary proceeding under Rule 139, given the two-year delay between the allegedly contemptuous conduct and issuance of the opinion holding Walker in criminal contempt. Nevertheless, even if the Superior Court had timely adjudicated Walker in contempt, the filing of a motion for recusal does not automatically stay all proceedings in a summary contempt action; in fact, this Court has previously held that a court may, under certain circumstances, summarily adjudicate an attorney in contempt under Rule 138 even if a recusal motion remains pending. *Rogers*, 56 V.I. at 341-42.

This case is distinct, however, in that the Superior Court itself acknowledged that it could be unconsciously biased as a result of Walker's actions. *In re M.R.*, 62 V.I. at 412. While

*see Benjamin*, 56 V.I. at 569.[6]

 In any case, the Superior Court erred when it held that Superior Court Rule 138 governed the matter to the exclusion of Superior Court Rule 139. Although the Superior Court emphasized that Rule 138 authorizes a judge to use a summary contempt procedure if the judge "saw or heard the conduct constituting the contempt and . . . it was committed in the actual presence of the court," it ignored that Rule 138 — by its own terms — requires that the contempt actually "be punished

---

the Superior Court also stated that it could fairly preside over the matter, it is difficult to reconcile that finding with its concurrent finding that its "judgment is unconsciously affected" when an attorney is "disrespectful to the court." *Id.*; *see Aetna Life & Cas. Co. v. Thorn*, 319 So. 2d 82, 85 (Fla. Dist. Ct. App. 1975) ("It is a party's right to have a judge free from any obvious source of possible unconscious bias."). This is particularly true when an unconscious, or implicit, bias may be undetectable to the judge, given that "individuals act on implicit biases without recognizing they are doing so." *Pippen v. State*, 854 N.W.2d 1, 33 (Iowa 2014) (Waterman, J., concurring).

[6] In addition to section 284(4), we note that Rule 2.11(A)(1) of the Code of Judicial Conduct adopted by this Court provides that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to" a situation where "[t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding." This Court has not yet had the occasion to determine the relationship between Rule 2.11 and section 284(4), including whether Rule 2.11 may have implicitly repealed section 284(4) given that the Legislature expressly vested this Court with the authority to establish the rules of judicial ethics. *See* 4 V.I.C. § 32(f)(2) ("The Supreme Court may adopt . . . the rules of judicial ethics."); *Kendall*, 55 V.I. at 916 (acknowledging that the American Bar Association's Model Rules of Judicial Conduct had been adopted by this Court through Supreme Court Rule 205). However, to the extent Rule 2.11 may apply to the exclusion of section 284(4), we note that while some courts have held that the rules governing recusal be relaxed in a summary contempt proceeding, no court has ever held that there is a blanket contempt exception to the Code of Judicial Conduct. *See Taylor v. Hayes*, 418 U.S. 488, 501, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974) (holding that recusal may be required even in the summary contempt context when the judge has become "so embroil[ed] . . . in controversy that he cannot 'hold the balance nice, clear and true between the [s]tate and the accused' ") (quoting *Tumey v. Ohio*, 273 U.S. 510, 523, 47 S. Ct. 437, 71 L. Ed. 749, 5 Ohio Law Abs. 159, 5 Ohio Law Abs. 185, 25 Ohio L. Rep. 236 (1927)); *Johnson v. Mississippi*, 403 U.S. 212, 215-16, 91 S. Ct. 1778, 29 L. Ed. 2d 423 (1971) (reversing criminal contempt conviction because the judge's failure to recuse, even in the summary contempt context, violated due process since the judge "was so enmeshed in matters involving [the contemnor]"); *United States v. Meyer*, 462 F.2d 827, 841, 149 U.S. App. D.C. 212 (D.C. Cir. 1972) (holding recusal may be required even in summary contempt proceeding if there is "a sufficient possibility of bias to make disqualification necessary to preserve the integrity of the judiciary"); *Matter of Sheffield*, 465 So. 2d 350, 356 (Ala. 1984) (holding that ordinary judicial ethics rules governing recusal, while relaxed, still apply to contempt proceedings).

summarily." (Emphasis added). As the Superior Court recognized in its May 21, 2015 opinion, Rule 138 is intended to provide "a procedural fast-track mechanism for direct contempt." *In re M.R.*, 62 V.I. at 404. In this case, more than two years elapsed between the May 8, 2013 reunification hearing — where the alleged contumacious conduct occurred — and when the Superior Court actually held Walker in criminal contempt on May 21, 2015, yet Walker was not provided with the full panoply of due process rights provided to those charged with non-summary criminal contempt.[7] That the Superior Court permitted this substantial — and completely unexplained — delay in adjudicating the criminal contempt matter is *per se* evidence that the Rule 138 procedure was inapplicable, and that the Superior Court should have afforded Walker all of the protections of Rule 139, including having the contempt proceeding assigned to a different judge. *See United Mine Workers of America v. Bagwell*, 512 U.S. 821, 832 (1994) ("If a court delays punishing a direct contempt . . . due process requires that the contemnor's rights to notice and a hearing be respected."); *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S. Ct. 2697, 41 L. Ed. 2d 897 (1974) (noting that it is "much more difficult to argue" that summary contempt is warranted "where conviction and punishment are delayed"); *Jessup v. Clark*, 490 F.2d 1068, 1072 (3d Cir. 1973) (holding that judge's delay in conducting contempt proceeding "demonstrates that summary procedure was not necessary"); *State v. Spainhower*, 251 Ore. App. 25, 283 P.3d 361, 366 (2012) (reversing summary criminal contempt case where court did not issue decision for 10 months); *Breitbart v. Galligan*, 135 A.D.2d 323, 525 N.Y.S.2d 219, 221 (1988) ("[T]he deferral of imposition of sanctions . . . indicates an absence of the type of immediacy required for summary contempt adjudication.").

### III. CONCLUSION

 Attorneys possess an obligation to advocate zealously for their clients, in good faith within the bounds of the law. On some occasions, this may entail making an argument that displeases a judge, or that a judge interprets — rightly or wrongly — as criticism. In this case, the Superior

---

[7] Although, the Superior Court—after initially attempting to hold it the next morning—held the contempt hearing approximately two weeks later, without a disinterested prosecutor or a neutral fact-finder, it was still a summary contempt proceeding.

Court perceived as criticism what an attorney likely intended as advocacy, and imposed the severe sanction of criminal contempt. In doing so, it ignored the maxim that "the law gives [judges] as persons, or courts as institutions . . . no greater immunity from criticism than other persons or institutions." *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839, 98 S. Ct. 1535, 56 L. Ed. 2d 1 (1978). Accordingly, we reverse the Superior Court's May 21, 2015 opinion and order adjudicating Walker in criminal contempt.